This case involves a boundary-line dispute between landowners Donald Henderson[1] and Anna Henderson (husband and wife) and their son, Michael Henderson, on the one hand, and their neighbors, Joe Allen Dunn and his mother, Trice Nelson (hereinafter referred to collectively as "Dunn"), on the other hand.
Before the events giving rise to this case, one of Dunn's predecessors in title, Richard C. Jones, owned a large tract of land lying within Section 23, Township 13 North, Range 7 East, in Wilcox County. As to that portion of the Jones property at issue in this case, the southern boundary of Jones's property was coterminous with the southern boundary of the northeast quarter of the southeast quarter of Section 23. The Hendersons' property lay immediately to the south of the Jones property, within the southeast quarter of the southeast quarter of Section 23. The Jones and Henderson tracts were contiguous, being separated by the boundary line separating the northeast quarter of the southeast quarter of Section 23 from the southeast quarter of the southeast quarter of Section 23. Both the Jones and Henderson tracts had as their eastern boundary the Alabama River.
Also before the events at issue in this case, a dam constructed on the Alabama River created a lake (known as Lake Dannelly) that flooded portions of both the Jones and the Henderson properties. As a result, a peninsula was created that was bordered on the east by the Alabama River and on the north and west by a slough constituting part of Lake Dannelly. The peninsula, which generally runs north and south, was located partially in the northeast quarter of the southeast quarter of Section 23 and partially in the southeast quarter of the southeast quarter of Section 23. Thus, the northern portion of the peninsula was part of the Jones property, but was cut off from the remainder of the Jones property by the aforementioned slough. The southern portion of the peninsula was part of the Henderson property.
In 1980, William R. Goodman purchased the northern portion of the peninsula from Jones. In 1981, Goodman constructed on the peninsula a house for use as a weekend retreat. In 1985, Goodman conveyed his property to Richard Wright, who used the house as his primary residence. In 1990, Wright conveyed this property to Joe Allen Dunn and Trice Nelson, who also used the property as their primary residence.
The Hendersons obtained a survey in 1996 that revealed that Dunn's house had been built on the Hendersons' property. On October 2, 1998, the Hendersons sued to eject Dunn from their property, alleging that they had obtained title to the parcel of property by a deed recorded in the Probate Court of Wilcox County in 1956. In their complaint, the Hendersons offered to pay Dunn the fair market value of the house (less the rents and profits owed) if Dunn could demonstrate that the house had been erected on their land by mistake. The Hendersons further sought to enjoin Dunn from the use of a roadway through their land that he used to access a public road.
Dunn answered by averring that he and his predecessors in title had since 1981 *Page 810 
maintained a residence on the property up to an old fence line located south of the house in question, and had maintained actual, continued, open, notorious, and hostile possession of the property up to that line. Dunn therefore asserted a counterclaim against the Hendersons, seeking title to the disputed property on the theory of adverse possession.
The trial court conducted a hearing at which ore tenus testimony was taken. On June 7, 2000, the trial court entered a judgment denying the Hendersons' claim for ejectment and vesting title to the disputed property in Dunn, based on the theory of adverse possession. On June 14, 2000, the Hendersons filed a motion requesting the trial court to rule on their claim seeking to enjoin Dunn from using a private roadway through their land, or, in the alternative, to certify its judgment as final pursuant to Rule 54(b), Ala.R.Civ.P. On July 7, 2000, the trial court entered a supplemental order denying the requested injunctive relief and granting Dunn an easement by necessity in the existing roadway. The Hendersons appealed to the Supreme Court. That court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
It is well established that when a trial court, after ore tenus proceedings, enters a judgment setting a boundary line between coterminous landowners, that judgment is presumed correct if it is supported by credible evidence. Valentine v. Ireland, 580 So.2d 581 (Ala. 1991). Further, the presumption of correctness that attaches to the findings of fact made by the trial court when it hears ore tenus testimony is particularly strong in adverse-possession cases. Lilly v. Palmer,495 So.2d 522 (Ala. 1986). In an adverse-possession case, the party asserting a claim to the property through adverse possession must show by clear and convincing evidence that there was "actual, hostile, open, notorious, exclusive, and continuous" possession for the statutory period. Grooms v. Mitchell, 426 So.2d 820, 822 (Ala. 1983).
Alabama recognizes two types of adverse possession: (1) statutory adverse possession pursuant to § 6-5-200, Ala. Code 1975, and (2) adverse possession by prescription. Sparks v. Byrd, 562 So.2d 211 (Ala. 1990). Specifically,
 "`Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808
(1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962).'"
562 So.2d at 214 (quoting Kerlin v. Tensaw Land Timber Co.,390 So.2d 616, 618 (Ala. 1980) (emphasis omitted)). Further, our Supreme Court has consistently held that boundary disputes between coterminous landowners are hybrid types of adverse possession subject to a unique set of requirements and a period of adverse possession of only 10 years, even if none of the three additional elements described in § 6-5-200 is present. E.g., Sashinger v. Wynn, 571 So.2d 1065 (Ala. 1990); Johnson v.Brewington, 435 So.2d 64 (Ala. 1983).
On appeal, the Hendersons argue that the trial court erred in vesting title to the disputed property in Dunn on the theory of adverse possession because, they say, Dunn had purchased the disputed property *Page 811 
in 1990 and this action was filed in 1998 — two years short of a 10-year holding period. Specifically, the Hendersons claim that the trial court erred in allowing Dunn to "tack" his adverse possessory interest in the property to that of his predecessors in interest. Citing Smith v.Cherry, 684 So.2d 1322 (Ala.Civ.App. 1996), as authority, the Hendersons claim that Alabama law prevents proof of a claim through adverse possession by "tacking" when the interest in the disputed property is not specifically conveyed by deed. We do not read Smith v. Cherry to stand for such a broad proposition. Rather, we construe that case to mean that, absent a clear conveyance of the disputed property in the deed, there must be some other evidence of intent to convey the disputed property. Further, this court in Smith v. Cherry, indulging the presumption in favor of the trial court, simply reviewed the record to determine whether credible evidence supported the trial court's judgment.
The "tacking" principle that the Hendersons have challenged was clarified by our Supreme Court in Watson v. Price, 356 So.2d 625 (Ala. 1978). The Watson court stated:
 "Because the application of the tacking principle is confusing under our present case law, we deem it appropriate to restate the principle and articulate the rationale for the rule. For the purpose of effecting title by adverse possession, where all the traditional elements are present, tacking of periods of possession by successive possessors is permitted against the coterminous owner seeking to defeat such title, unless there is a finding, supported by the evidence, that the claimant's predecessor in title did not intend to convey the disputed strip. We hold that this rule should apply even though the conveying instrument contains no legal description of the property in question, and irrespective of the period for which the property was possessed by the present claimant's predecessor in title. We perceive no logical or practical reason why the application of the privity of possession rule permitting tacking should be dependent upon whether the claimant's immediate grantor possessed the disputed property for more or less than the statutory period."
356 So.2d at 627.
In Mardis v. Nichols, 393 So.2d 976 (Ala. 1981), Watson was cited with approval:
 "The rule established in Watson is based upon the rationale that `[the] transfer of the possession alone is sufficient to create the privity for [the] purpose [of tacking of adverse possession periods], and written evidence of the transfer is not necessary when the property is held by the transferee under the claim of the first entryman.'"
393 So.2d at 979 (quoting Holt v. Adams, 121 Ala. 664, 25 So. 716
(1898)). We cannot say that the trial court erred in tacking the time that Dunn had adversely possessed the disputed strip to the time that the strip had been adversely possessed by his predecessors in interest.
In reviewing the propriety of the trial court's ruling on Dunn's claim of title to the disputed strip of property by adverse possession, we look to see if that ruling is supported by credible evidence. Smith, 684 So.2d at 1324. The record reflects that both Robert Jones, the property owner who conveyed the parcel upon which Dunn's house is situated to William Goodman, and Goodman himself testified that they believed a fence erected by the Henderson family, probably shortly after World War II, was the coterminous boundary. The Hendersons claim that the true boundary is the government quarter-section line, as surveyed. *Page 812 
The trial court based its ruling in favor of Dunn on his claim of adverse possession on the following findings of fact and conclusions of law:
 "In February, 1981, Goodman began construction of a house on the property in question. There is no dispute that the house is located south of the south line of the N.E. 1/4 of the S.E. 1/4. Therefore, the house is located in the S.E. 1/4 of the S.E. 1/4 and not in the N.E. 1/4 of the S.E. 1/4 and not on the property as described in the deed. According to . . . Plaintiffs' exhibit 10, the north corner of the deck attached to the house was approximately 68 feet south of that line.
 "Goodman used the house primarily as a camp house or weekend retreat until he conveyed the property on November 21, 1985, to Richard Wright. Wright lived in this home as his primary residence until he conveyed the property on August 17, 1990, to Joe Allen Dunn and Trice Nelson, the Defendants in this case. Mr. Dunn and his family have resided in the house and on the property adjacent thereto as well since the time of their purchase. Mr. Jones, Mr. Goodman, Mr. Wright, Mr. Dunn and George Fendley, a friend of Richard Wright, all testified as to the existence of a fence located just south of the house built by Goodman. Goodman testified that this was the boundary shown to him by Jones when he purchased the property. While the witnesses' descriptions as to the exact location of the fence varied, they all testified that the fence or remnants thereof were present. Each of the property owners Jones, Goodman, Wright, and Dunn, have claimed ownership to this old fence line.
 "There is a dispute as to the purpose of the fence. Jones claims that this was the boundary line fence erected by the Plaintiffs' predecessor in title indicating the boundary between the Jones and Henderson property. The Plaintiffs, while not admitting the fence even exists, apparently argued that if it did exist it was only a fence around an old pond or to hold livestock but that it was never intended as a boundary line fence. For purposes of this decision the Court does not have to resolve that dispute.
 "The Plaintiffs and the Defendants are coterminous landowners. The Defendants are claiming ownership of the disputed property which is that property located south of the property per the deed description and north of the old fence line which intersected the peninsula in the S.E. 1/4 of the S.E. 1/4. The Defendants claim ownership of this disputed portion by adverse possession.
 "To prevail on their claim of adverse possession, the Defendants must prove open, notorious, hostile, continuous, and exclusive possession of the disputed property for ten years. Adverse possession by a coterminous landowner is a form of statutory adverse possession. They need not show adverse possession for the twenty-year prescriptive period nor are they required to prove a deed, color of title to the property, annual listings for taxation or descent or devise from a predecessor in title in order to maintain their claim. The law is well established by the courts of this state as set forth in Johnson v. Brewington, 435 So.2d 64 (Ala. 1983), and Mardis v. Nichols, 393 So.2d 976 (Ala. 1981). There can be no clearer evidence of adverse possession than that shown by the Defendants and their predecessors in title. A house was constructed and lived in for seventeen years prior to this suit being brought."
We find the trial court's ruling on Dunn's claim of title to the property on the theory of adverse possession to be supported by substantial evidence. *Page 813 
The Hendersons also claim that because Dunn offered to purchase the property after the Hendersons obtained the 1996 survey that prompted the present action but before the action was actually filed, he is now precluded from asserting his claim of adverse possession to the property. We are not persuaded by their argument. The trial court determined, and substantial evidence supports the determination, that title to the disputed strip of property had, by way of adverse possession, already vested in Dunn at the time he made the offer of purchase. Therefore, the offer of purchase could not have prejudiced Dunn's claim to property that he already legally possessed; under such circumstances, the offer of purchase may be construed as an attempt to buy peace or to avoid litigation. See Crowden v. Grantland, 510 So.2d 238 (Ala. 1987).
Finally, the Hendersons argue that the trial court erred in concluding that Dunn held an easement by necessity across the Hendersons' property. The Hendersons contend that easements by necessity require a "conveyance from a common owner" or grantor and that there was no such common grantor in this case. We agree.
In Bull v. Salsman, 435 So.2d 27 (Ala. 1983), our Supreme Court explained:
 "A common law way of necessity is a type of easement by implication and `rests on the implication that the parties intended and agreed to provide for such a way.' Sayre v. Dickerson, 278 Ala. 477, 491, 179 So.2d 57
(Ala. 1965). For such an implication to arise, there must have been an original grantor who impliedly granted an easement across his remaining lands to the purchaser of the land-locked parcel. Therefore it has been stated that `[o]riginal unity of ownership of the dominant and servient tenements is always required for an easement of necessity.' Helms v. Tullis, 398 So.2d 253, 255 (Ala. 1981), see also, Burrow v. Miller, 340 So.2d 779 (Ala. 1976); Sayre v. Dickerson, supra; Hamby v. Stepleton, 221 Ala. 536, 130 So. 76 (1930)."
435 So.2d at 29.
Dunn in effect responds by arguing that there is a "conveyance" from a common grantor in this case because, he says, he acquired his property from the Hendersons, albeit by adverse possession. However, as discussed above, Dunn defends the trial court's judgment regarding the land on which his house is situated by contending that his dispute with the Hendersons is a dispute only over the boundary line of property he and his predecessors acquired from Jones (and that, therefore, he prevails in that dispute by showing only 10 years of adverse possession without also having to show any of the three elements outlined in § 6-5-200(a)). Dunn cannot have it both ways. Either this case involves a boundary-line dispute and an adverse-possession claim related to a parcel of property that Dunn and his predecessors acquired from Jones, or it involves a claim by Dunn to a separate parcel of land as to which the Hendersons can be viewed as the "grantors."
We are affirming the trial court's ruling as to the title to the property upon which Dunn's house is located based on Dunn's theory that this case involves a boundary-line dispute. If we were instead to view Dunn as acquiring a wholly separate parcel of property by way of adverse possession from the Hendersons, the opinion of our Supreme Court inMcCallister v. Jones, 432 So.2d 489 (Ala. 1983), would suggest that we must require Dunn to prove either 20 years of adverse possession, rather than 10, or one of the three additional elements outlined in § 6-5-200.See also Johnson v. Brewington, 435 So.2d 64 (Ala. *Page 814 
1983) (citingMcCallister); Kerlin v. Tensaw Land Timber Co., 390 So.2d 616 (Ala. 1980). Our acceptance of the view that this case is merely a dispute over the boundary line of the parcel of land that Dunn's predecessors acquired from Jones is antithetical to the premise upon which Dunn must argue for an easement by necessity — that he has acquired a separate parcel of land from the Hendersons, thus enabling him to satisfy the common-grantor rule.[2]
Moreover, as noted in the above-quoted passage from Bull, an easement by necessity "`rests on the implication that the parties intended and agreed to provide for such a way.'" 435 So.2d at 29 (quoting Sayre,278 Ala. at 491, 179 So.2d at 70). The evidence in this case does not support such an implication. We cannot conclude that, in a case where a party claiming an implied easement across the land of another must premise that claim on an acquisition of his property from that other party by adverse possession, that the owner of the property across which the easement would run can be considered a "grantor whom impliedly granted an easement across his remaining lands" for the benefit of the property wrested from him by adverse possession.[3]
Accordingly, while we affirm the judgment of the trial court with respect to the boundary-line dispute between Dunn and the Hendersons, we must reverse the trial court's judgment insofar as it recognizes an easement by necessity in favor of Dunn.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Donald Henderson died after the trial court had entered its judgment, and this court allowed the substitution of his estate as a party on appeal.
[2] Dunn's predicament regarding access to his property derives from the fact that that property, being at the end of a peninsula, was "landlocked" at the time Dunn's predecessors in title acquired it from Jones. The fact that Dunn now prevails in a boundary-line dispute with the Hendersons, thus adjusting the southern boundary of that property, does not give Dunn any greater claim to an easement across the adjacent property of the Hendersons. In other words, from "the beginning," Dunn and his predecessors, Goodman and Wright, have "needed" an easement (or some similar right) across the Hendersons' property in order to have access over land to a public road. This "necessity" does not exist, and is no greater or lesser a necessity, as a result of the adjustment of Dunn's southern boundary line that we recognize today.
[3] Dunn makes no claim in this case for condemnation of a right of way by necessity pursuant to Ala. Code 1975, § 18-3-1 et seq.