This case is a boundary-line dispute involving two adjacent large tracts of farm and timber land. M.C. Dixon Family *Page 713 
Partnership, LLLP ("Dixon"), appeals from a judgment establishing the boundary line between land owned by Dixon and land owned by Envision Properties, LLC ("Envision").
Dixon filed the present action to establish the true boundary between the properties of the parties. The trial court held a trial in which it heard testimony from surveyors and lay witnesses and received documentary evidence. The trial court also personally viewed the property in dispute. Thereafter, a judgment was entered that established the boundary line according to a survey prepared for Envision in 2002 by Jeffcoat Engineers Surveyors, LLC ("the 2002 Jeffcoat survey"). Dixon filed a motion to alter, amend, or vacate the judgment; that motion was denied by operation of law. Dixon filed a timely appeal.
At issue in this appeal are two triangular parcels of land of approximately four acres each, at the eastern boundary of Dixon's property. The two parcels are more or less triangular in shape and are identified as parcel J and parcel H on the appendix attached to this opinion. Parcel J is claimed by Dixon by adverse possession; both parties admit that Envision has record title to this parcel. Parcel H is claimed by both parties on the basis of record title; adverse possession is not at issue with regard to parcel H. Parcels J and H are mostly timber land.
In 1936, Dixon's predecessor acquired several hundred acres from the Federal Land Bank of New Orleans. The 1936 deed to Dixon's predecessor described the land conveyed by reference to government quarter section lines and a recorded subdivision plat prepared by Alabama Pecan Company ("the Alabama Pecan Company plat"). The relevant portion of land conveyed to Dixon's predecessor is described as the "Southwest quarter of Southeast quarter, Section 13, less and except those portions of Lots 18A, 10A, and 12 of Block 9 [of the Alabama Pecan Company plat] contained therein," and the "West half of Northeast quarter, Section 24, less and except those portions of Lots 2A, 4, 5, 6, and 7 of Block 12 [of the Alabama Pecan Company plat] contained therein."
In 1943, Envision's predecessor, Lex Lunsford, and his wife, Louise Lunsford, acquired from J.W. Sweeney and May S. Sweeney approximately 383 acres of land immediately east of Dixon's land. The 1943 deed to the Lunsfords described the relevant land by reference to lots in the Alabama Pecan Company plat. It does not appear that the land as described in the 1943 deed encroaches on Dixon's land. In 1960, however, the Lunsfords executed a deed to and from themselves to create a joint tenancy with right of survivorship. The 1960 deed, unlike the 1943 deed, described the Lunsford land by metes and bounds as set forth in a survey prepared by J.L. Sellers in 1960. As will be discussed in more detail below, the property described by metes and bounds in the Lunsfords' 1960 deed overlaps with a portion of the property described in the 1936 deed to Dixon's predecessor.
Among other things, Dixon alleged that Lex Lunsford and Dixon's predecessor made an oral agreement that their mutual boundary line would be an unnamed creek or branch ("the creek") near and roughly parallel to the line forming the boundary of the Southwest quarter of the Southeast quarter of Section 13 and the boundary of the West one-half of the Northeast quarter of Section 24. This agreement was not reduced to writing, and there was no testimony at the trial from anyone who was present when it was allegedly made or any other competent evidence of that agreement. Dixon admits in its brief to this *Page 714 
court that its claims are not based on an enforceable agreement.
In 1999, Envision purchased the Lunsfords' 383-acre tract from the Lunsfords' heirs in a court-approved sale for division. Dixon was not a party to the litigation resulting in the 1999 sale for division. The 1999 clerk's deed was prepared by reference to the metes and bounds description of the Lunsfords' property contained in the 1960 deed.
The 2002 Jeffcoat survey was based on the 1999 clerk's deed, which, as noted, was based on the legal description of the Lunsfords' property in the 1960 deed. Guthrie Jeffcoat, a licensed surveyor who prepared the 2002 Jeffcoat survey, testified that he did not review or consider the 1936 deed to Dixon's predecessor when preparing the survey. The 2002 Jeffcoat survey does not show the relevant quarter-quarter section lines or the lot lines of the Alabama Pecan Company plat.
 "It is well established that when a trial court, after ore tenus proceedings, enters a judgment setting a boundary line between coterminous landowners, that judgment is presumed correct if it is supported by credible evidence. Further, the presumption of correctness that attaches to the findings of fact made by the trial court when it hears ore tenus testimony is particularly strong in adverse-possession cases."
Henderson v. Dunn, 871 So.2d 807, 810 (Ala.Civ.App. 2001) (citation omitted). This presumption reflects the fact that in boundary-line cases witnesses frequently point to maps and make gestures that are not reflected in the trial record. Moss v.Woodrow Reynolds Son Timber Co., 592 So.2d 1029, 1030 (Ala. 1992). Moreover, "the presumption [of correctness] is further enhanced if the trial court personally views the property in dispute." Bell v. Jackson, 530 So.2d 42, 44 (Ala. 1988).
Dixon's claim to parcel J is based solely on adverse possession. A party claiming by adverse possession must prove "by clear and convincing evidence that there was `actual, hostile, open, notorious, exclusive, and continuous' possession for the statutory period." Henderson, 871 So.2d at 810 (quoting Groomsv. Mitchell, 426 So.2d 820, 822 (Ala. 1983)). "[T]he burden of proof rests upon the party asserting adverse possession, and every presumption is in favor of the holder of legal title." Leev. Brown, 482 So.2d 293, 295 (Ala. 1985).
Dixon makes two arguments concerning parcel J: (1) that the trial court erred by addressing only Envision's record title to parcel J; and (2) that there is uncontroverted evidence of Dixon's adverse possession of parcel J. As to Dixon's first argument, it has been stated that "in the absence of specific findings of fact, the appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous." Ex parteBryowsky, 676 So.2d 1322, 1324 (Ala. 1996). As a general rule, "`[w]here a judgment is silent with regard to the disposition of a matter, it is presumed that the claim is denied.'" Horwitz v.Horwitz, 897 So.2d 337 (Ala.Civ.App. 2004) (quoting 46 Am.Jur.2dJudgments § 94 (1994)). See also Dutton v. Chester F. RainesAgency, Inc., 475 So.2d 545 (Ala. 1985).
The trial court's judgment does not expressly address adverse possession in the paragraph in which the court states a conclusion that all right, title, and interest to parcel J be vested in Envision.[1] The trial *Page 715 
court did, however, hear evidence concerning Dixon's alleged adverse possession of parcel J. Moreover, based on our review of the judgment in its entirety, we conclude that by vesting legal title in Envision, the trial court intended to implicitly deny Dixon's adverse-possession claim.
Dixon's second argument — that there was uncontroverted evidence requiring the court to find that Dixon adversely possessed parcel J — also fails. We review the evidence of adverse possession in light of the rule that the trial court's judgment is presumed correct because it heard oral testimony and viewed the property. Henderson, 871 So.2d at 810; Bell,530 So.2d at 44.
Dixon presented evidence that Dixon and its predecessor had for many years subjectively "recognized" the creek as the boundary line between Dixon's property and the Lunsfords' property, but it did not present any competent evidence thatLunsford recognized the creek as the boundary line.[2]
Moreover, Dixon presented very little evidence of those activities normally associated with an assertion of ownership of or dominion over land. See Bearden v. Ellison, 560 So.2d 1042,1044 (Ala. 1990) (the focus of the inquiry must be on the acts of the claimant manifesting a claim of right sufficient to constitute adverse possession). The only evidence of overt acts showing Dixon's possession of parcel J is testimony from Dixon's employees and retired employees that Dixon had commissioned the painting of boundary-line marks on trees during the 1980s. That evidence is disputed by testimony from one of Envision's principals that he did not see any such marks in 1999. The trial court could have found Dixon's evidence not credible, or it could have determined that the painted line could not be accurately located, see Myers v. Owens, 291 Ala. 528, 530, 283 So.2d 420,421 (1973), or it could have determined that the marks were not sufficient to provide notice of Dixon's claim to ownership.
Finally, the trial court could have considered the absence of physical evidence of adverse possession. Although made in a portion of the judgment in which the court analyzes the issue of title to parcel H, the following findings were made by the trial court:
 "[S]hortly before trial, [Dixon] clearcut all the [timber] on Parcel `J' and part of the [timber] on Parcel `H' of the [2002 Jeffcoat Survey] and in the process destroyed monuments and other means of identifying the property which would have aided the Court in reaching a decision in this case. The Court considers this as spoliation of the evidence and an admission against the interest of [Dixon]."
See Vesta Fire Ins. Corp. v. Milam Co. Constr., 901 So.2d 84,93 (Ala. 2004) ("As a general rule, if the trier of fact finds a party guilty of spoliation, it is authorized to presume or infer that the missing evidence reflected unfavorably on the spoliator's interest."). Even if the trial court did not expressly rely upon Dixon's spoliation of evidence in making its determination as to parcel J, we note that the absence of evidence necessarily works against Dixon, who had the burden of proving adverse possession by clear and convincing evidence. Based on the foregoing, we conclude that the trial court's judgment with respect to parcel J is due to be affirmed.
The facts concerning parcel H, and the nature of Dixon's assertions as to that *Page 716 
parcel, are confusing. In the complaint, Dixon claimed, based on the alleged oral boundary-line agreement between Dixon's predecessor and Lunsford, that its eastern boundary follows the center line of the creek. At the trial, Dixon argued, additionally or alternatively, that its eastern boundary is the quarter-quarter section line, as provided in the 1936 deed to Dixon's predecessor. In this appeal, Dixon has apparently abandoned its contention that the creek is the boundary line, and it now contends that the true boundary line is the quarter-quarter section line.
The trial court's task was complicated by the absence of any evidence definitively showing the quarter-quarter section line or the relevant lot lines of the Alabama Pecan Company plat in relation to the 2002 Jeffcoat survey.[3] Dixon prepared its own survey, and it stated its intention at trial to call its surveyor as a witness. For reasons never explained, Dixon did not call its surveyor as a witness and it did not introduce its survey into evidence. The absence of competent evidence showing all of the relevant lines on the same plat makes it almost impossible to locate the true boundary line except by rough estimation.
Despite the paucity of evidence relating the 2002 Jeffcoat survey to the lands conveyed to Dixon's predecessor by the 1936 deed, it is nonetheless clear that the trial court's judgment is in error. The evidence is undisputed that Dixon has record title to the land west of the government quarter-quarter section line, less and except certain lots shown on the Alabama Pecan Company plat. Those lots do not approximate the shape, location, or orientation of parcel H. Richard J. Shorter, a surveyor who prepared the metes and bounds description on which the 1999 clerk's deed was based, testified that the legal description set forth in the 1999 clerk's deed overlaps with the land described in the 1936 deed to Dixon's predecessor. Moreover, even a cursory examination of the 2002 Jeffcoat survey and the 1936 deed reveals a conflict or encroachment. In the 2002 Jeffcoat survey, the boundary line between Dixon's land and Envision's land lies at an angle approximately 12 degrees west of north for a distance of several hundred feet. This line is demonstrably inconsistent with the fact that Dixon's eastern boundary is the quarter-quarter section line, which lies within approximately one degree of due north. The northwesterly running line of the 2002 Jeffcoat survey therefore cannot be the correct eastern boundary line of Dixon's property.[4]
In a boundary-line case, "`[t]he burden is not on either party as to the true location of the line in the sense that if the evidence is equally balanced [the complainant] loses the controversy.'" Bell, 530 So.2d at 43 (quoting Stansell v.Tharp, 245 Ala. 270, 273, 16 So.2d 857, 858 (1944)). Instead, once the parties present evidence to show the controversy, the trial court must proceed to fix the true line, whether or not it is the line advocated by either party. Id. *Page 717 
The trial court erred in fixing the boundary line to parcel H without taking into account Dixon's property line as set forth in the 1936 deed to Dixon's predecessor, which prevails over the deed to Lunsford. Envision is correct in its argument that the 2002 Jeffcoat survey is competently prepared, that it is consistent with the 1960 deed and the 1999 clerk's deed, and that it specifically relates to known points on the ground. That is, however, all irrelevant because the 1960 deed and the 1999 clerk's deed cannot divest Dixon's title. The 2002 Jeffcoat survey does not reflect Dixon's boundary under the 1936 deed. Consequently, the boundary reflected in the 2002 Jeffcoat survey causes Envision's land to encroach onto Dixon's land. The 2002 Jeffcoat survey therefore cannot establish the true boundary line.
We therefore conclude that the trial court erred in establishing the boundary line with respect to parcel H. We reverse the trial court's judgment as it pertains to parcel H, and we remand the cause for the trial court to establish the true boundary line with respect to parcel H in accordance with this opinion.
In light of our disposition, we do not need to address Dixon's contention that the trial court erred in applying the doctrine of spoliation to Dixon's cutting of trees on parcel H. We note, however, that, given the nature of the legal description in the 1936 deed to Dixon's predecessor, it should be possible to establish the true boundary line without reference to monuments, if any, previously set within parcel H and destroyed by Dixon's clearcutting.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN and BRYAN, JJ., concur in the result, without writing. *Page 718 
 APPENDIX
[1] However, see the discussion of spoliation of evidence by Dixon as to both parcel J and parcel H, infra.
[2] Dixon admits in its brief to this court that its claims are not based on the alleged oral agreement between Dixon's predecessor and Lunsford and that the agreement is referred to only to explain the reason that Dixon and Lunsford occupied the land to the creek.
[3] In its brief to this court, Dixon complains that the trial court neglected the "fairly tedious" process of locating the lots conveyed to Dixon's predecessor in the 1936 deed by reference to the corresponding numbered lots on the Alabama Pecan Company plat. We note that Dixon did not favor the trial court or this court with a plat showing the location of those lots.
[4] Dixon attempted to have Jeffcoat demonstrate this discrepancy, but the trial court sustained an objection that his testimony would be speculative unless Jeffcoat used proper drafting instruments to draw the quarter-quarter section line. This evidentiary ruling was not appealed, but we find that precision is not needed to determine that the judgment was erroneous. *Page 719