[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 531 
This is a boundary-line dispute between two landowners. Allen P. Wadsworth, Jr., appeals from a summary judgment entered in favor of Linda W. Thompson that denied his claim to ownership of the disputed land by adverse possession.
Wadsworth owns approximately 60 acres of farmland ("the Wadsworth farm") in Autauga County. Wadsworth's father moved onto the Wadsworth farm in 1936 and purchased the 60 acres in 1939. Wadsworth has been the sole owner of the Wadsworth farm since his mother died in 1976. Wadsworth's father and his tenants and, later, Wadsworth and his tenants[1] have used the Wadsworth farm for raising cattle, farming, and growing timber.
Thompson owns approximately 290 acres of land immediately to the east and south of the Wadsworth farm. Thompson lives on her land, several hundred yards from the land at issue here. Thompson and her family have for many years used their land for farming, raising cattle, growing pecans, and growing timber.
The land at issue ("the disputed strip") is a long, narrow strip of land between the record, eastern boundary line of the Wadsworth farm and an old fence. The strip is approximately 2,000 feet long, and it ranges from 30 to 100 feet wide. The Wadsworth family and their tenants have used at least part of the disputed strip for raising cattle and growing crops since 1936.[2]
In April 2002, Wadsworth filed his complaint against Thompson and a logging company, asserting a claim for damages for trespass for cutting trees on the disputed strip, which Wadsworth claims to own by adverse possession. Wadsworth also sought a judgment declaring the old fence to be the true boundary between the coterminous properties. On Wadsworth's motion, the logging company was dismissed.
Thompson answered, and the case was set for trial in August 2003. In July 2003, Thompson filed a motion for a summary judgment, along with supporting documentary evidence. Wadsworth filed an opposition to the summary-judgment motion, along with a brief and supporting documentary evidence. At a pretrial conference in July 2003, the trial court continued the trial. On August 13, 2003, Wadsworth supplemented his opposition to Thompson's motion for a summary judgment.
On March 3, 2004, the trial court entered a summary judgment in favor of Thompson. The summary judgment was based on the trial court's determination (1) that there was no competent evidence that the fence was in place when Wadsworth's father purchased the Wadsworth farm in 1939, (2) that "the more competent evidence supports the fact that [Wadsworth's] *Page 532 
father's use of the disputed property was permissive," and (3) that the use by Wadsworth's father was not exclusive because the Thompson family also made use of the disputed strip. Wadsworth filed a timely appeal to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7.
 "We review a summary judgment de novo, applying the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing `that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala. R. Civ. P. The court must view the evidence in a light most favorable to the nonmoving party and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990). If the movant meets this burden, `the burden then shifts to the nonmovant to rebut the movant's prima facie showing by "substantial evidence."' Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992)."
Bailey v. R.E. Garrison Trucking Co., 834 So.2d 122, 123
(Ala.Civ.App. 2002).
A party claiming ownership of property by adverse possession must prove by clear and convincing evidence that there was "`actual, hostile, open, notorious, exclusive, and continuous'" possession for the statutory period.[3] Henderson v.Dunn, 871 So.2d 807, 810 (Ala.Civ.App. 2001) (quoting Grooms v.Mitchell, 426 So.2d 820, 822 (Ala. 1983)). "[T]he burden of proof rests upon the party asserting adverse possession, and every presumption is in favor of the holder of legal title." Leev. Brown, 482 So.2d 293, 295 (Ala. 1985).
The elements of actual, open, notorious, and continuous possession are easily addressed. "The presence of a fence, which is an outstanding symbol of possession, coupled with normal acts of use in appropriation of the land, sufficiently satisfies the requirements of adverse possession." Bearden v. Ellison,560 So.2d 1042, 1045 (Ala. 1990). There is ample evidence, most of it undisputed, that Wadsworth and his father and their tenants used the disputed strip, up to the old fence, for farming, raising cattle, and related activities from 1939 through 1976 or later.[4] Their use was actual, open, and notorious. "`[I]t is not necessary to physically reside upon the land to establish title by adverse possession.'" Sparks v. Byrd, 562 So.2d 211,215 (Ala. 1990) (quoting Hand v. Stanard, 392 So.2d 1157, 1160
(Ala. 1980)). Farming the land to the fence line is sufficient to constitute actual possession. Id.; Kubiszyn *Page 533 v. Bradley, 292 Ala. 570, 575, 298 So.2d 9, 13 (1974) (cultivation, cutting timber, and growing pasture to fence line were sufficient to support claim of adverse possession). Wadsworth has presented evidence sufficient to create a genuine issue of material fact as to the elements of adverse possession.
Thompson's primary argument is that the Wadsworth family's use of the disputed strip was permissive. See Tidwell v. Strickler,457 So.2d 365, 368 (Ala. 1984) ("possession cannot be presumed to be hostile"). Thompson testified that, from the outset, her father and uncles gave Wadsworth's father permission to use the disputed strip. Thompson also testified that, in the 1950s, her father and uncles gave Wadsworth's father permission to build a fence (referred to in this opinion as "the old fence") to allow Wadsworth's father's cattle to reach a pond that was being built at that time. If the initial use is found to have been permissive, continued use will not ripen into adverse possession by mere lapse of time. Wallace v. Putman, 495 So.2d 1072, 1076
(Ala. 1986). "In order to change possession from permissive to adverse, the possessor must make a clear and positive disclaimer or repudiation of the true owner's title." Moss v. WoodrowReynolds Son Timber Co., 592 So.2d 1029, 1031 (Ala. 1992).
The evidence is disputed, however, concerning whether Thompson's father and uncles gave Wadsworth's father permission to use the disputed strip and to build the old fence. Wadsworth presented evidence indicating that the old fence was present when Wadsworth's father moved onto the land in 1936 and that both Wadsworth's father and Thompson's father and uncles had always treated the old fence as the eastern boundary of the Wadsworth farm.[5] Wadsworth also presented evidence indicating that his father always held the disputed strip under a claim of right and that he never heard anyone grant his father permission to use the disputed strip. Moreover, Wadsworth presented evidence indicating that Thompson's father and uncles asked his father's permission before they built a road in the 1950s that backed up a flow of water and created a pond now located on the disputed strip.
Viewing, as we must, the evidence in the light most favorable to Wadsworth, as the nonmovant, we conclude that Wadsworth has created an issue of material fact as to whether his father's use of the disputed strip was permissive or hostile.
Thompson also argues that Wadsworth's possession was not exclusive because her family used the disputed strip for hunting and growing pecan trees. In Dees v. Pennington, 561 So.2d 1065,1068 (Ala. 1990), our Supreme Court reversed a judgment in favor of the party alleging adverse possession of land because both parties had repeatedly cut timber on the disputed property, thus preventing the party asserting ownership by adverse possession from proving exclusive possession for the requisite period.
Thompson's contentions regarding Wadsworth's possession of the disputed strip fail for several reasons. First, most of the acts that she described occurred after title would have vested in Wadsworth's father by adverse possession. See Crowden v.Grantland, 510 So.2d 238 (Ala. 1987) (once title vested in adverse possessors, they did not have to continue adversely *Page 534 
possessing property in order to retain title; previous owner would have to adversely possess property to get title back). Second, there are factual disputes as to the various acts that Thompson alleges support her contention regarding nonexclusive possession.[6] Finally, it is not clear that certain activities alleged by Thompson rise to a level sufficient to constitute possession. The only undisputed uses made by Thompson and her predecessors of the disputed strip were hunting, occasional pleasure walks, and playing by the pond.[7]
Occasional hunting and pleasure walks may not be sufficient, as a matter of law, to constitute possession by Thompson and her predecessors and thus to prevent Wadsworth from establishing exclusive possession. See Strickland v. Markos, 566 So.2d 229,235 (Ala. 1990) (quoting Sparks v. Byrd, 562 So.2d at 215, and 2 C.J.S. Adverse Possession § 54, p. 727 (1972)) ("`[e]xclusivity of possession "is generally demonstrated by acts that comport with ownership"'"; in the absence of erection of physical improvements, exclusivity of possession is determined by "`substantial activity'").
Accordingly, we conclude the Wadsworth has created a genuine issue of material fact as to whether his father's use of the disputed strip was exclusive for the statutory period.
Based on the foregoing, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON and BRYAN, JJ., concur.
PITTMAN, J., concurs in the result, without writing.
[1] Wadsworth does not live on the land.
[2] As will be discussed later in this opinion, there is a dispute as to when the fence was built, but there is no dispute that the Wadsworth family has used at least part the of disputed strip since 1936.
[3] The parties both appear to agree that the applicable statutory period is 10 years because this is a boundary dispute.See Jones v. Johnson, 827 So.2d 768, 773 n. 2 (Ala. 2002). Assuming without deciding that 10 years is the appropriate statutory period, title would have vested in Wadsworth's father in 1949, which is before many of the events described by the parties and their witnesses in this litigation.
[4] Thompson argues that Wadsworth could not adversely possess the disputed strip because he never lived in Autauga County after the mid-1950s. That argument fails because Wadsworth's father used the disputed strip for farming from 1939 until his death in 1968, which is more than the statutory period. Moreover, Wadsworth's tenants continued to use the disputed strip for farming and/or raising cattle after the death of Wadsworth's father. The activities of a tenant inure to the benefit of the landlord. Wadkins v. Melton, 852 So.2d 760, 766 (Ala.Civ.App. 2002).
[5] Under Wadsworth's version of the facts, it is not clear as to who built the old fence, when it was built, or for what purpose.
[6] For example, both Thompson and her son testified at their depositions that Thompson and her predecessors had not used the disputed strip for farming, raising cattle, or growing timber. In her deposition, Thompson testified that she was not aware that her family had planted pecan trees on the disputed strip. She later submitted an affidavit in which she claims to have visited the disputed strip after her deposition and to have determined that her family had planted pecan trees there many years before. Wadsworth testified Thompson and her predecessors had never used the disputed strip.
[7] Although Thompson argues in her brief to this court that she and her predecessors have lived on and cultivated the disputed strip, a review of the record reveals that most of these activities were in fact done on Thompson's land outside the disputed strip.