On Application for Rehearing

BRYAN, Judge.
The no-opinion affirmance of December 1, 2006, is withdrawn, and the following is substituted therefor.
First Beat Entertainment, L.L.C. (“First Beat”), appeals a judgment establishing the location of the boundary line between its property and the property owned by ECC, L.L.C. (“ECC”). We affirm.
First Beat owns a rectangular strip of property (“First Beat’s property”) in Section 26, Township 2 North, Range 26 East (“Section 26”) in Houston County. The northern boundary of First Beat’s property abuts a portion of the southern boundary of a parcel of property owned by ECC (“ECC’s property”). Thus, First Beat’s property and ECC’s property share a common boundary line. The parties agree that the legal description of their common boundary line is the south line of the north half of the northeast quarter of Section 26, but they disagree regarding where the south line is physically located on the land. The eastern boundary of First Beat’s property abuts the west right-of-way of U.S. Highway 231 (“the highway”), which runs generally north and south. Thus, the south line, which runs east and west, intersects with the west right-of-way of the highway. At a point south of the intersection of the south line and the west right-of-way of the highway (“the intersection”) the course of the highway’s west right-of-way shifts westward at an angle of approximately 90 degrees. The parties refer to that point as the “jog” in the west right-of-way of the highway. Since at least 1968, surveyors have used the jog as a landmark to assist them in locating the intersection.
First Beat erected a fence (“the fence”) along what it contended was the location of the south line to keep ECC from trespassing on First Beat’s property. Wanting to restore its ability to cross First Beat’s property at will, ECC, in March 2004, sued First Beat, seeking an injunction requiring First Beat to remove the fence. First Beat answered and asserted a counterclaim. In its counterclaim, First Beat alleged that ECC was liable for damages for trespass and was liable for half of the cost of the fence pursuant to § 35-7-3, Ala. Code 1975.[1]
When it first filed its lawsuit, ECC did not contend that the fence was on its property. Consequently, the trial court, holding that a landowner has a right to erect a fence on his property, dismissed ECC’s claim for an injunction requiring First Beat to remove the fence. First Beat’s counterclaim remained pending.
After the dismissal of ECC’s claim but before the adjudication of First Beat’s counterclaim, First Beat moved the trial court to find ECC in contempt of the trial court’s order dismissing ECC’s claim because ECC had allegedly removed a portion of the fence. In response, ECC contended that at least a portion of the fence was on its property. Accordingly, the trial court ordered the parties to each nominate two registered surveyors as candidates for the trial court to consider in selecting a master to assist the trial court in deter *268 mining where the south line was located in relation to the fence. Both parties listed registered surveyor Rick Kinsaul as one of their two candidates, and the trial court appointed Rick Kinsaul to serve as the master.
In November 2005, Kinsaul completed his survey. According to Kinsaul’s survey, approximately half of the fence was located along the south line, but approximately half was located north of the south line and, therefore, was on ECC’s property.
On April 27, 2006, the trial court held an evidentiary hearing regarding the issue of where the south line was located in relation to the fence. At the hearing, the trial court received the testimony of Kinsaul and three other registered surveyors, John Steensland, Elijah Branton, and Burl Mercer. The trial court also received Kin-saul’s survey, three other surveys, a map, and 11 deeds as evidence.
Kinsaul testified that he determined the location of the south line as follows. He did the field work necessary to physically locate the southwest corner of the northwest quarter of the northeast quarter of Section 26, which is the western terminus of the south line. The location of that corner had been marked previously with an iron pipe. He also did the field work necessary to physically locate the southeast corner of the northeast quarter of the northeast quarter of Section 26, which is the eastern terminus of the south line. That corner had also been marked previously with an iron pipe. He used the location of those two corners to determine the location of the south line, which connects those two corners. He testified that he did not locate the south line by retracing the original government survey of Section 26.[2] However, he verified his placement of the south line by checking his placement mathematically in relation to landmarks described in previous surveys of property in the vicinity of the south line and landmarks described in the legal descriptions of deeds to property situated in the vicinity of the south line.
The jog was one of the landmarks he used to verify the accuracy of his determination of the location of the south line. Kinsaul’s determination of the location of the south line placed the intersection 156.20 feet north of the jog. John Steens-land’s 1980 survey of the property that later became ECC’s property indicated that the intersection was 164.85 feet north of the jog. However, John Steensland’s father, Maurice Steensland, had performed a survey in 1968, and his survey indicated that the intersection was 156 feet north of *269 the jog. Burl Mercer performed several surveys of property in the vicinity of the south line between 1970 and 1990. In those surveys, Mercer indicated that the intersection was 156 feet north of the jog. However, in 1990, Mercer’s surveys of property in the vicinity of the south line began to indicate that the intersection was 165 feet north of the jog instead of 156 feet.
John Steensland testified that retracing the original government survey of the section as described in footnote 2, supra, is the protocol for determining the location of a line subdividing the section. However, Steensland further testified that, because the monuments established by the original government surveys often disappear with the passage of time, modern-day surveyors often must rely on earlier surveys in order to determine the location of a line subdividing the section instead of retracing the original government survey.
Steensland testified that he was uncertain where the south line was located after he performed his 1980 survey, and he remains uncertain today where the south line is located. Consequently, Steensland testified, he could not opine that Kinsaul’s determination of the location of the south line was incorrect.
Elijah Branton, who had surveyed ECC’s property before the lawsuit, testified that Kinsaul’s survey correctly located the south line. He further testified that Kinsaul’s survey was accurate in indicating that the intersection was 156.20 feet north of the jog.
Burl Mercer, who had performed the survey for First Beat that determined the location where First Beat erected the fence, testified that he had surveyed property in the vicinity of the south line a number of times over the last 36 years. Mercer further testified that, for 20 years he had accepted Maurice Steensland’s finding that the intersection was 156 feet north of the jog; however, in 1990, he had determined that the intersection was actually 165 feet north of the jog instead of 156 feet. Mercer opined that Kinsaul’s determination of the location of the south line was incorrect.
Following the hearing, First Beat moved the trial court to strike Kinsaul’s testimony and survey. As grounds, First Beat alleged:
“(1) The testimonies of John Steens-land and Elijah Branton, when coupled with the testimony of Rick Kinsaul, established that Rick Kinsaul did not comply with the established and recognized rules of surveying in establishing the south line of the N 1/2 of the NE 1/4 of Section 26, T2N, R26E, in that he did not locate and reference Section corners in making such determination, and his determination of such line is therefore not trustworthy and should not be relied upon by this Court.
“(2) Both this Court and the parties to this action had the right to assume that Rick Kinsaul would observe and comply with the rules applicable to conducting a survey of the type with which he was entrusted by the Court.”
On May 3, 2006, the trial court entered an interlocutory judgment denying First Beat’s motion to strike Kinsaul’s testimony and survey and determining that Kinsaul’s survey accurately located the south line. The judgment stated:
“The matter before the Court is the establishment of the south line of the N 1/2 of the NE 1/4 of Section 26, T2N, R26E in Houston County, Alabama which determines the exact location of the boundary line between the disputing parties. Pursuant to agreement of the parties the Court appointed Mr. Rick Kinsaul to survey and establish the line *270 in dispute in this case. At the evidentia-ry hearing held on April 27, 2006 the Court received testimony, surveys, deeds and related documents on this issue.
“Upon hearing the testimony and review of the material submitted the Court denies the Motion To Strike the survey and testimony of Rick Kinsaul. Although there were various conflicts in the testimony and surveyor opinions as well as certain inconsistencies in the various deeds over the years with the surveys, the Court finds that the great weight of the evidence supports the location of the line as established in the November 21, 2005 survey of Kinsaul and Associates land surveyors on file in this ease.
“Therefore, the Court finds and orders that the line so established is the location of the south line of the N 1/2 of the NE 1/4 Section 26, T2N, R26E, in Houston County and the boundary line between the properties owned by the parties to this suit.”
Upon the motion of ECC, the trial court, on May 8, 2006, entered an order certifying its May 3, 2006, interlocutory judgment as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. On June 13, 2006, First Beat appealed the May 3, 2006, judgment to the supreme court. The supreme court, pursuant to § 12-2-7(6), Ala.Code 1975, subsequently transferred First Beat’s appeal to this court.
On appeal, First Beat argues that the trial court erred in finding that Kinsaul’s survey accurately depicted where the south line was located because, First Beat says, Kinsaul did not locate the south line by retracing the original government survey of Section 26 as described in footnote 2.[3] In support of this argument, First Beat cites 43 U.S.C. § 752,[4] which states, in pertinent part:
“First. All the corners marked in the surveys returned by the Secretary of the Interior or such agency as he may designate, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half- and quarter-sections not marked on the surveys shall be placed as nearly as possible equidistant from two corners which stand on the same line.
“Second. The boundary lines, actually run and marked in the surveys returned by the Secretary of the Interior or such agency as he may designate, shall be established as the proper boundary lines of the sections, or subdivisions, for which they were intended, and the length of such lines as returned, shall be held and considered as the true length thereof. And the boundary lines which *271 have not been actually run and marked shall be ascertained, by running straight lines from the established corners to the opposite corresponding corners; but in those portions of the fractional townships where no such opposite corresponding corners have been or can be fixed, the boundary lines shall be ascertained by running from the established corners due north and south or east and west lines, as the case may be, to the watercourse, Indian boundary line, or other external boundary of such fractional township.
Third. Each section or subdivision of section, the contents whereof have been returned by the Secretary of the Interi- or or such agency as he may designate, shall be held and considered as containing the exact quantity expressed in such return; and the half sections and quarter sections, the contents whereof shall not have been thus returned, shall be held and considered as containing the one-half or the one-fourth part, respectively, of the returned contents of the section of which they may make part.”
43 U.S.C. § 752 provides that the corners of a section and any other landmarks within the section established by the original government survey shall be adhered to in the future. However, it does not purport to state that every time a survey is made of a line dividing a quarter of a section into quarters, the original government survey of that section must be retraced. Moreover, First Beat has cited no caselaw holding that 43 U.S.C. § 752 requires such a retracing. The reasonable inference to be drawn from the earlier surveys locating the south line and the iron pipes marking the termini of the south line was that earlier surveyors had located the termini of the south line and its location based on the location of the four corners of Section 26 as established by the original government survey of Section 26.
In the absence of law expressly requiring that Kinsaul retrace the original government survey in order to locate the south line, the issue before the trial court was whether Kinsaul had accurately located the south line. Because the testimony bearing on that issue was in conflict, the trial court was required to evaluate the credibility of the witnesses and determine the weight to be accorded their testimony. Consequently, the ore tenus rule governs our review of the trial court’s judgment. See Ex parte R.E.C., 899 So.2d 272 (Ala.2004). In Ex parte R.E.C., the supreme court stated:
“ ‘The ore tenus rule provides that a trial court’s findings of fact based on oral testimony “have the effect of a jury’s verdict,” and that “[a] judgment, grounded on such findings, is accorded, on appeal, a presumption of correctness which will not be disturbed unless plainly erroneous or manifestly unjust.” Noland Co. v. Southern Dev. Co., 445 So.2d 266, 268 (Ala.1984). “The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.” Hall v. Mazzone, 486 So.2d 408, 410 (Ala.1986).’
“Ex parte Anonymous, 803 So.2d 542, 546 (Ala.2001). ‘The trial court’s judgment in cases where the evidence is heard ore tenus will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ River Conservancy Co., L.L.C. v. Gulf States Paper Corp., 837 So.2d 801, 806 (Ala.2002). Accord Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989). ‘In ore tenus proceedings, the trial court is the sole judge of the facts and of the credibility *272 of the witnesses, and it should accept only that testimony which it considers worthy of belief.’ Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993).
“ ‘ “Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court. Ex parte Roberts, 796 So.2d 349, 351 (Ala.2001) (quoting Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala.1996)). ‘When the evidence in a case is in conflict, the trier of fact has to resolve the conflicts in the testimony, and it is not within the province of the appellate court to reweigh the testimony and substitute its own judgment for that of the trier of fact.’ Delbridge v. Civil Serv. Bd. of Tuscaloosa, 481 So.2d 911, 913 (Ala.Civ.App.1985). ‘[A]n appellate court may not substitute its judgment for that of the trial court. To do so would be to reweigh the evidence, which Alabama law does not allow.’ Ex parte Foley, 864 So.2d 1094, 1099 (Ala.2003) (citations omitted).”
899 So.2d at 279.
Moreover, in the case of judgments establishing the location of a boundary line between coterminous landowners, the ore tenus presumption of correctness “reflects the fact that in boundary-line cases witnesses frequently point to maps and make gestures that are not reflected in the trial record.” M.C. Dixon Family P’ship, LLLP v. Envision Props., LLC, 911 So.2d 711, 714 (Ala.Civ.App.2005) (citing Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d 1029, 1030 (Ala.1992)).
In the case now before us, the trial court’s finding that Kinsaul’s survey accurately located the south line was supported by Kinsaul’s testimony, Elijah Branton’s testimony, the survey of Maurice Steens-land, several surveys by Burl Mercer, and the legal descriptions in a number of deeds. Therefore, the trial court’s judgment was not so unsupported by the evidence as to be plainly and palpably wrong. Although Burl Mercer’s testimony contradicted the evidence supporting the trial court’s judgment, the trial court could have found that Mercer’s testimony was not credible. See Ex parte R.E.C. Accordingly, the trial court’s judgment is due to be affirmed.
APPLICATION OVERRULED; NO-OPINION AFFIRMANCE OF DECEMBER 1, 2006, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
CRAWLEY, P.J., and THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.

. Section 35-7-3 states:
"Partition fences between improved lands are to be erected and repaired at the joint expense of the occupants; or if any person makes a fence a partition fence by joining to or using it as such, he must pay to the person erecting it his proportion of the expense, taking into consideration the condition of such fence at the time it is so joined or used.”

. Locating the south line by retracing the original government survey of Section 26 would involve (1) performing the field work to determine the location of the four corners of Section 26 established by the original government survey; (2) performing the field work to divide the section into quarters based on the location of the four comers of the section; and (3) performing the field work to divide the northeast quarter of the section into quarters.
Dividing the section into quarters based on the location of the four corners of the section would involve (1) connecting the four comers of the section with lines; (2) determining the precise midpoint of each of those lines; (3) connecting the midpoints of the north and south section lines with a line; and (4) connecting the midpoints of the east and west section lines with a line. The lines resulting from steps (3) and (4) would divide the section into quarters.
Dividing the northeast quarter into quarters would involve (1) determining the precise midpoint of each line forming the northeast quarter of the section; (2) connecting the midpoints of the north and south lines of the northeast quarter with a line; and (3) connecting the midpoints of the east and west lines of the northeast quarter with a line. The lines resulting from steps (2) and (3) would divide the northeast quarter into quarters, and the line resulting from step (3) would be the south line.

. ECC argues 'that First Beat, by calling Kin-saul as a witness and introducing his survey into evidence, waived any error on the part of the trial court in finding that Kinsaul's survey accurately located the south line. This argument may be correct. However, because the issue is unique and First Beat is not entitled to prevail on the merits anyway, we have disposed of First Beat's appeal on its merits rather than on the basis of such a waiver.

. First Beat did not cite 43 U.S.C. § 752 to the trial court, although it did argue to the trial court that Kinsaul was required to retrace the original government survey in order to locate the south line. ECC argues that this court should not consider First Beat's argument on appeal because it did not cite 43 U.S.C. § 752 to the trial court. This argument may well be correct. However, since First Beat did present to the trial court the argument that Kinsaul should have retraced the original government survey of Section 26 and since First Beat cannot prevail on the merits anyway, we have disposed of First Beat’s appeal on its merits rather than on the basis of First Beat’s failure to cite the statute in the trial court.