We must determine whether the trial court properly decided the location of a line and the disputed ownership of several acres of land. The property in dispute is depicted in the shaded portion of the drawing found in Appendix A. We hold that the trial court's judgment was proper and affirm.
The McCallisters, plaintiffs-appellants, testified that they purchased their interest in the land involved in this dispute, referred to as South Farm, from James Otis Byrd and his wife in 1967. Slade Jones, a defendant-appellee, testified that he acquired his interest in North Farm, which includes the disputed boundary line, by inheritance in 1968 or 1969. Jones and his wife conveyed twenty-two acres, including the disputed parcel, to Howard Womack, another defendant-appellee, in March 1979.
The McCallisters claim the line labeled as Line A in the drawing to be the correct boundary line. Jones and Womack, on the other hand, assert that the line labeled as Line B in the drawing is the proper boundary line. While the McCallisters acknowledge that the boundary line in dispute was originally the line designated in the drawing as Line B, they claim that the boundary was changed to the line labeled A by the adverse possession of their predecessors in title.
Mr. H.B. Espy testified in his deposition, which was later admitted into evidence at the trial, that he built the fence that runs along Line A sometime during the period of 1910 to 1914. Mr. Espy further testified that the fence was changed from its original location, Line B, to its new location, Line A, because every time the river rose, it washed the fence away. Thus, as an economy measure he "angled it over to the side and built it." At the time, title to all the land was in an estate. There was no testimony at the trial regarding the disputed boundary line during the time from about 1916 until 1954, except that Elijah Branton, a surveyor called by the McCallisters as a witness, testified that the fence wire found on the old fence line claimed by the McCallisters was very old so as to indicate that it was in existence at that location between 1916 and 1954.
John E. Byrd testified that he had knowledge of the disputed boundary line since 1958, when he had investigated purchasing the property either individually or for Peoples Savings Life Insurance Company (hereinafter life insurance company) while he was serving as the company's president. John Byrd stated that in his capacity as president of the life insurance company, he purchased South Farm in 1962 from W.H. Arnold. Byrd testified that at the time of the purchase he and Arnold discussed and walked the three to five acres presently the center of this controversy and that Arnold represented that the disputed parcel was his and that he, Byrd, purchased it from Arnold as a part of the larger tract. John Byrd further testified that during the period the life insurance company owned the land, he regularly went onto the disputed land, that fire lanes were plowed on it, that cows were run on it, that he hunted on it, and that he replaced the fence located on Line A with a new one. Although Byrd mentioned that trespassing signs were posted on the disputed acreage, he did not state when they were posted. He also testified that from 1958 until about 1971 or 1972, there was never a fence located on what is labeled as Line B in the drawing.
James Otis Byrd testified that he was familiar with the disputed boundary line from 1962 until 1977. In 1977, the South Farm was transferred from the life insurance company to James Otis Byrd and he sold the farm to the McCallisters on April 4, 1977. Jerry McCallister testified that when he first became familiar with the land in *Page 491 
1954, there was a fence located along Line A and that it remained there continuously until about 1973, when his contact with South Farm temporarily ended.
Slade Jones testified that he inherited the land in dispute in approximately 1968 or 1969, and that he had the land surveyed about 1971. He stated that he had the surveyor begin where the line labeled as Line A intersects with the river, however, the surveyor discovered that the property description in the deed did not work from that starting point, but rather should run along what is labeled as Line B. Slade Jones testified that he tore down the fence located along Line A, either in 1973 or 1974, and placed another fence along Line B, where, he testified, he found the remnants of an old fence when he dug underground. Although Slade Jones testified that he had no idea who tended the disputed area prior to 1973, he stated that he had paid taxes on the disputed land from the time he inherited it.
The evidence was heard by the court ore tenus. The trial judge ruled against the McCallisters, holding that the proper boundary line was the boundary line as contained in the legal description contained in the deeds held by both parties. The McCallisters' motion for a new trial was denied and this appeal followed.
The McCallisters premise their claim that the line labeled as Line A is the proper boundary line on the following reason:
 "In the case at bar, Mr. Espy testified in his deposition that he built the fence that runs along [Line A, as indicated in Appendix A] somewhere around 1910 to 1914. At this period of time, the land on both sides of the fence were parts of the Espy Estate. Based upon Mr. Espy's testimony, it is logical to infer that the fence in question was put up by agreement between the contiguous owners of the property and that ten years after the date title vested in the McCallisters' predecessor in title. Thus, a new boundary line was established by agreement in approximately 1924, ten years after erection of the fence. In this regard, the evidence is undisputed that the fence erected by Mr. Espy, or at least a fence in the same location, existed from 1954 until it was torn down by Slade Jones around 1974 or 1975. A further reasonable inference is that the same fence was used as a boundary line between 1914 and 1954."
The Court, however, does not agree that the trier of fact was bound by the McCallisters' reasoning as to this particular issue. In Kerlin v. Tensaw Land Timber Co., Inc.,390 So.2d 616 (Ala. 1980), we held:
 "Boundary disputes are subject to a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession. In the past there has been some confusion in this area, but the basic requirements are ascertainable from the applicable case law. In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years. See Reynolds v. Rutland, 365 So.2d 656 (Ala. 1978); Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975); Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968); Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554 (1944); Smith v. Bachus, 201 Ala. 534, 78 So. 888 (1918). But see, Davis v. Grant, 173 Ala. 4, 55 So. 210 (1911). See also Code 1975, § 6-5-200 (c). The rules governing this type of dispute are, in actuality, a form of statutory adverse possession. See Code 1975, § 6-5-200 (c); Berry v. Guyton, 288 Ala. 475, 262 So.2d 593 (1972)."
390 So.2d at 618-619.
The trial judge found:
 "[T]hat the use by the Plaintiffs and their predecessors in possession of the land in dispute was permissive rather than adverse and that there was never an agreement that the fence built by H.B. Espy in or about the year 1914 was built as a boundary line fence. Rather it was *Page 492 
erected for an entirely different purpose and was never accepted by him or his successors as the true boundary line between the lands. . . ."
We believe these findings are supported by the evidence.Kerlin, supra.
The fact that neither the McCallisters nor their predecessors in title erected the fence and that it was not the intention of Mr. Espy for the fence in question along Line A to serve as a boundary fence when he originally erected it, is sufficient for this Court to affirm the trial judge's ruling that the fence erected along Line A never became the true and exclusive boundary line between South Farm and North Farm. See Mardis v.Nichols, 393 So.2d 976 (Ala. 1981); Brantley v. Helton,224 Ala. 93, 139 So. 283 (1932). Alternatively, the McCallisters argue that "[i]f the new boundary line was not established by agreement between 1924 and 1954, then it was established by agreement sometime during the period from 1964 through 1972 or 1973." We find no evidence of any such agreement and hold that this argument is meritless.
The McCallisters next contend that the boundary line between their predecessors in title and the appellees' predecessors in title was changed by adverse possession for ten years. Although the McCallisters maintain that this action is a boundary line dispute between coterminous owners, the facts of this case unequivocally establish that this case is one of adverse possession of a three to five acre parcel; therefore, we must scrutinize the facts and the evidence of this case to ascertain if the requisite elements of adverse possession have been met.
In order to perfect a claim of adverse possession, the claimant must satisfy the following requirements as set forth in Kerlin v. Tensaw Land Timber Co., Inc., supra:
 "In Alabama there are basically two types of adverse possession, these two types being statutory adverse possession and adverse possession by prescription. Adverse possession by prescription requires actual, exclusive, open, notorious and hostile possession under a claim of right for a period of twenty years. See, Fitts v. Alexander, 277 Ala. 372, 170 So.2d 808 (1965). Statutory adverse possession requires the same elements, but the statute provides further that if the adverse possessor holds under color of title, has paid taxes for ten years, or derives his title by descent cast or devise from a possessor, he may acquire title in ten years, as opposed to the twenty years required for adverse possession by prescription. Code 1975, § 6-5-200. See, Long v. Ladd, 273 Ala. 410, 142 So.2d 660 (1962)."
390 So.2d at 618; Thomas v. Davis, 410 So.2d 889 (Ala. 1982).
The evidence fails to convince this Court that the trial judge erred in failing to find that the McCallisters or their predecessors in title had fulfilled the requirements of either statutory adverse possession or adverse possession by prescription. The trial judge found that the "use of the disputed parcel" by the McCallisters and their predecessors was but "casual and intermittent . . . and less than that required to meet the test of adverseness." This finding was not clearly erroneous or manifestly unjust.
To repeat the familiar, "Where the trial court has heard the evidence ore tenus, its findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust."Thomas v. Davis, 410 So.2d 889, 892 (Ala. 1982). See Tanner v.Thompson, 376 So.2d 697, 698 (Ala. 1979). Consequently, after having carefully examined the record, we do not find that the findings of the trial judge are due to be disturbed. Accordingly, the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 493 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.]