This appeal arose out of a boundary line dispute over land located in Madison County.
The Wallaces filed a complaint with the circuit court to quiet title to the property in question, declare the boundary lines of the parties, and determine whether they had by prescription acquired the right to use a paved road running along the boundary. After hearing ore tenus evidence and viewing the property personally, the court ruled in favor of the defendant, D.L. Putman.
Putman acquired a 36-acre tract of rural property in 1983. This property is bordered on its eastern side by property owned by Willie and Virginia Wallace since 1965. According to their respective deeds, the common boundary line should be the north-south center line of Section 4, Township 3 South, Range 2 West.
The Wallaces contend, however, that the boundary is farther to the west, specifically to the center line of Pettus Road. Their contention is in direct conflict with the language of their deeds, which draws the road in controversy entirely within the boundaries of Putman's land. The Wallaces claim that adverse possession and an agreement between the coterminous landowners justify expansion beyond the reach of their deed. The Wallaces alternatively claim that the roadway in question was built by Madison County, that it is a public road, and that they have acquired the right to use the roadway by prescription.
The following diagram depicts the lands in question and should aid in understanding the parties' claims: *Page 1074 
[EDITORS' NOTE: DIAGRAM IS ELECTRONICALLY NON-TRANSFERRABLE.]
In its findings of fact the trial court held that Putman had not acquired the property by adverse possession and there was no understanding or agreement between the Wallaces and D.L. Putman's predecessors in title to accept the center of Pettus Road as the property line.
With respect to the Wallaces' other claims, the court decreed:
 "[T]he roadway in question was prepared, graded and graveled by employees of the defendant using the defendant's equipment. The gravel used was purchased from the County and paid for by the defendant. The paving on the roadway in question was purchased from Shelby Construction Company and paid for by the defendant. The roadway in question lies entirely on the lands of the defendant as evidenced by a survey prepared at the plaintiffs' request. . . .
 ". . . The testimony generally shows that in the early part of this century there was a road of some sort extending north from Nick Davis Road to Capshaw Mountain. The primary use of the road was by people who either lived on the lands, worked the lands or visited relatives who lived on the lands. The secondary use of this road was an occasional or intermittent use by hunters, hikers and berry pickers. In order for private lands to become a public roadway by prescription, the roadway must be open, defined and in continuous adverse use by the public under a claim of right, without let or hindrance for a period of 20 uninterrupted years. Also, where the alleged roadway runs through wooded or unimproved lands, it takes clear and convincing proof to overcome the presumption that the use of the land was merely permissive. It is common knowledge that roads in the country are frequently used as a matter of convenience without any intention on the part of the landowners to dedicate or give up the lands for public use. The evidence in this case tends to show a permissive use by the landowners. Practically all of the witnesses who testified indicated that they felt they had permission to use the roads for hunting, hiking and picking blackberries. The people *Page 1075 
who lived in this area during the time in question used each other's lands for these purposes without asking permission. It was generally understood during that period of time that there was no objection on the part of the landowners to such use. The Court can find no proof of a distinct claim by the people who used the road to any right adverse to the owners. The evidence in this cause is more consistent with permissive use rather than adverse use. The evidence also reveals that gates and fences have been placed across the alleged roadway from time to time during its existence and that the area had been used as a pasture for cattle.
 "The most compelling evidence concerning this matter is the aerial photographs taken of the area dating from 1944 through 1981. These photographs show fields and woods in the area in question from 1944 through 1968, a period in excess of 20 years. Testimony supports a finding that, even if the roadway had at one time been considered a public roadway during the 1910's, '20's, and '30's, it was effectively abandoned in the early 1940's and not reopened in any form or fashion until 1968. In 1968 the County graded the road from Nick Davis Road to the TVA easement. At that time Mr. Sidney Neill had purchased a four-acre tract adjoining the plaintiffs' and defendant's property and lying on a portion of the roadway. The County graveled the graded road to Mr. Neill's property; however, it was not graveled beyond his property to the area in question. Following this, the area in question was fenced by Mr. Neill and was again reclaimed by nature with trees, vines and briars taking over the land. Also, cattle were allowed to graze in the area. It is the finding of this Court that the portion of the alleged roadway in dispute in this case is not and was not a public road.
 "The Court also finds that the plaintiffs have not acquired the right to use the roadway by prescription. In order to acquire an easement by prescription, certain requirements must be met. First, there must be two distinct tenements, one being dominant to which the right belongs and one being servient upon which the obligation rests. The lands of the plaintiffs in this case are bounded on the south by Nick Davis Road, a public road, for a distance of 1300 feet. Their lands are bounded on the west side by an extension of Pettus Road for a distance of approximately 1731 feet. There is no essential need to cross the lands of the defendant to gain access to the plaintiffs' lands. Additionally, in order to create an easement by prescription, there must be a continuous, open, hostile and adverse user for more than 20 years. The plaintiffs have only owned this land since 1965. This lawsuit was filed in 1984. It is not disputed that the area in question was fenced and gates were placed across the area in question during the plaintiffs' ownership and that they were allowed by the landowners to go upon their property for the purpose of repairing their fences. This constitutes a permissive use rather than an adverse use and would not establish an easement by prescription."
The Wallaces contend upon appeal that the ore tenus rule does not apply in this case and that the trial court's findings of fact are unsupported by the weight of the evidence.
It is well settled that where testimony is presented ore tenus, the trial court's findings are to be favored with a presumption of correctness and not disturbed upon appeal unless palpably erroneous, without supporting evidence, or manifestly unjust. Drennen Land Timber Co. v. Angell, 475 So.2d 1166,1170 (Ala. 1985). This presumption is particularly strong in boundary line disputes and adverse possession cases, Scarbroughv. Smith, 445 So.2d 553, 556 (Ala. 1984), and is further enhanced if the trial court personally views the property in dispute. Fowler v. Fayco, Inc., 290 Ala. 237, 275 So.2d 665
(1973).
 "Transcripts of the evidence concerning boundary line disputes are, as a rule, the most confusing and difficult to follow, *Page 1076 
comprehend and understand of all customary and ordinary trials because of the common tendency of some attorneys, surveyors, parties and other witnesses to fail to clarify with particularity their questions and/or answers when discussing maps, plats, roads, courses, distances and reference points. In such cases the wisdom of, and the need for, the ore tenus rule are evident."
Engebrits v. Dykes, 434 So.2d 798, 799 (Ala.Civ.App. 1983).
The ore tenus rule is only applicable, however, if the trial court's conclusions are based totally or in part on oral testimony and if the evidence is disputed. Otherwise, no presumption will attach. Burroughs v. Great Atlantic Pac. TeaCo., 462 So.2d 353 (Ala. 1984).
In the case at bar, the Wallaces called 30 witnesses on their behalf, and D.L. Putman offered the testimony of eight witnesses. Numerous surveys, maps, and aerial photographs were introduced into evidence, but they were supplemented and explained by live witnesses.
Moreover, the evidence was in dispute. The Wallaces' witnesses testified as to the public nature of the road, its good condition, the existence of an agreement to move the boundary lines, and that permission was never granted to them or others to use the road. Putman's witnesses offered testimony diametrically opposed to these points. For instance, Sidney Neill, the owner of four acres on the southeast corner of Putman's tract, testified that around 1972 he placed a barbed wire fence across the southern border of the disputed portion of Pettus Road, and that his cows grazed in the overgrown roadbed. Such testimony is hardly consistent with the Wallaces' claims that the road was indisputably public and that they had acquired a right to use it by prescription. Clearly, the ore tenus rule applies in this case.
With these principles in mind, we review the trial court's findings.
In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years or by adverse possession. Kerlinv. Tensaw Land Timber Co., 390 So.2d 616, 618 (Ala. 1980). There is ample evidence to support the trial court's holding that neither occurred in this case.
Testimony of Willie Wallace and witnesses on his behalf does nothing but exhibit the confusion of the parties involved as to the location of the boundary line. One witness testified that he "just figured" the center of Pettus Road was the boundary line. Willie Wallace himself testified that his boundary ran to an old fence line and that when the fence was torn down to make room for the road's expansion, the line's location approximated the center of the road. On cross-examination, however, Wallace admitted that the old fence line is in fact to the east of the disputed portion of Pettus Road. The foregoing hardly establishes the existence of any sort of agreement or common understanding among the landowners.
We find that the Wallaces' claim of adverse possession to the center of the road is likewise without merit. As stated by this Court in Long v. Ladd, 273 Ala. 410, 412-13, 142 So.2d 660, 662
(1962), the elements of title by adverse possession are:
 "(1) such possession as the land reasonably admits of, (2) openness and notoriety and exclusiveness of possession, (3) hostility toward everybody else in respect of possession, (4) holding possession under claim of right or claim of color of title, and (5) continuity for statutory period of ten years."
It is well settled that entry upon and possession of land with permission of the owner will not ripen into title by adverse possession. Enterprise Lodge No. 352 of the Knights ofPythias, Inc. v. First Baptist Church of Evergreen, 292 Ala. 579, 298 So.2d 17 (1974); Kidd v. Browne, 200 Ala. 299,76 So. 65 (1917).
The record is replete with instances of permissive use of the road by the Wallaces. Mr. Wallace testified that he had *Page 1077 
the permission of Putman's predecessors in title to hunt, fish, and pick walnuts along the road in dispute. There was also testimony to the effect that Mr. Wallace and his family had permission to use the road beyond the locked gate erected by Neill in 1972.
Putman and his brother testified that they cleared, graveled, and graded a road above Neill's house. A private work order was introduced into evidence showing that Putman paid for four loads of gravel at $25 per load and for 15 minutes' use of a grading machine, all supporting the trial court's finding that the roadway was not built by the county.
As to the Wallaces' claims that the road in dispute is in fact a public roadway and that they have acquired the right to use the roadway by prescription, once again the evidence is overwhelming in its tendency toward permissive rather than adverse use by the Wallaces as well as the general public.
Particularly compelling is testimony by Tom Gillespie, custodian of the official government documents maintained by the Tennessee Valley Authority, that in his opinion based on field notes and maps between 1958 and 1982, no road existed in any form. Other testimony indicates that the disputed portion of Pettus Road was not visible from aerial photographs taken of the area from 1944 to 1968, while other roads in the vicinity were clearly discernible.
We find that the trial court's summary of the testimony presented is in accordance with the record on the issues of prescription and whether the roadway is public. Additionally, the conclusions of law set forth by the trial court on these points are amply supported by case law developed by this Court.Bazzell v. Cain, 285 Ala. 661, 235 So.2d 805 (1970); West v.West, 252 Ala. 296, 40 So.2d 873 (1949); Jesse French Piano Organ Co. v. Forbes, 129 Ala. 471, 29 So. 683 (1900).
As noted previously, the ore tenus rule prevents this Court from altering the trial court's findings where those findings are not clearly erroneous or manifestly unjust. Rule 52, A.R.Civ.P. The presumption of correctness in this case is further buttressed by the trial judge's personal inspection of the property in dispute. Accordingly, the trial court's ruling is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.