THOMAS, Judge.
 

 Sherry L. Gilbreath and Raymond W. Gilbreath own a 30-acre parcel of real property located in Crossville. Their deed also conveyed to them a 21-foot strip of land running south from their property to the Crossville-Oak Hill public road. A driveway to the Gilbreaths residence is located generally inside the 21-foot strip. The western boundary of their property is the quarter section line of the northwest quarter of the northeast quarter of Section 33.
 

 Charlotte Harbour and Richard Earl Harbour own a parcel of property adjoining the Gilbreaths’ property on its western border. The Harbours’ eastern boundary is described in their deed as the quarter section line of the northwest quarter of the northeast quarter of Section 33. The Har-bours erected a fence (“the Harbour fence”) along, but not on, the easternmost boundary of their property. The Harbour fence parallels the Gilbreaths’ driveway but is located along the edge of an earthen berm or bank that sits above the drive and the ditch alongside of it. Thus, there exists a strip of land between the Harbour fence and the driveway.
 

 The Gilbreaths and the Harbours had been neighborly until Raymond Gilbreath had the Harbours’ son arrested in 2001. The neighborly relationship deteriorated at that point, and the Gilbreaths insisted that the Harbours were not entitled to use the driveway or any of the land located between the driveway and the Harbour fence. The Harbours had their property surveyed in 2002, and they insisted that they owned the land between the driveway and the Harbour fence. In fact, the Har-bours’ survey revealed that, at certain points, the Gilbreaths’ driveway crossed the quarter section line and encroached upon their property.
 

 In February 2004, the Gilbreaths sued to establish a boundary line between the properties and claimed that they had adversely possessed the strip of land between the driveway and the Harbour fence. In addition, the Gilbreaths claimed that the Harbours’ son, Timothy Harbour, had trespassed on their property, and they sought damages for trespass and a restraining order against him. The parties agreed, and the trial court ordered, that the trespass claim and other issues pertaining to Timothy Harbour would be tried separately.
 
 [1]
 

 After a trial on the boundary-line issue, the trial court entered a judgment declaring the boundary line between the properties, determining that the Gilbreaths had not proven that they had adversely possessed the strip between the Harbour fence and the driveway, awarding the Gil-breaths a prescriptive easement over the driveway, and denying the Harbours a prescriptive easement over the driveway.
 
 *476
 
 The Gilbreaths appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6). We dismissed that appeal, because, although the trial court had rendered an order certifying the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P., that order had never been input into the State Judicial Information System (“SJIS”) and had therefore never been entered as required by Rule 58(b), Ala. R. Civ. P.
 
 See Gilbreath v. Harbour,
 
 3 So.3d 875, 878 (Ala.Civ.App.2008). After our dismissal of the first appeal, the trial court directed the entry of its order certifying the boundary-line judgment as final, and the Gilbreaths again appealed to the Alabama Supreme Court; that court transferred that appeal to this court, pursuant to Ala.Code 1975, § 12-2-7(6).
 

 On appeal, the Gilbreaths complain that the trial court erred in determining that they had not proven that they had adversely possessed the driveway and the strip of land between the driveway and the Harbour fence. In addition, the Gil-breaths argue that, because the trial court determined that they had established a prescriptive easement over the driveway, it erred in not finding that they had adversely possessed at least that part of the Har-bours’ property over which portions of the driveway run. The Harbours, however, contend that the trial court correctly concluded that the Gilbreaths had failed to present clear and convincing evidence of adverse possession because the testimony at trial regarding the upkeep of the disputed strip was conflicting and because any actions taken by the Gilbreaths to mow and clear the strip were not hostile.
 

 “ Where a trial court hears
 
 ore tenus
 
 testimony [in a boundary-line case], ... its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous.’
 
 Bearden v. Ellison,
 
 560 So.2d 1042, 1043 (Ala.1990). The presumption of correctness accorded to the trial court’s findings based on evidence presented ore tenus ‘is particularly strong in boundary line disputes and adverse possession cases, and the presumption is further enhanced if the trial court personally views the property in dispute.
 
 Wallace v. Putman,
 
 495 So.2d 1072, 1075 (Ala.1986).’
 
 Bell v. Jackson,
 
 530 So.2d 42, 44 (Ala.1988).”
 

 Shirey v. Pittman,
 
 985 So.2d 484, 486 (Ala.Civ.App.2007). However strong the ore tenus presumption in adverse-possession cases, “[t]he presumption ... is inapplicable where the facts are undisputed and the issue is resolved simply by applying the relevant law to these undisputed facts.”
 
 Lilly v. Palmer,
 
 495 So.2d 522, 526 (Ala.1986).
 

 Raymond Gilbreath testified that he had been familiar with the properties in question since 1966, because he had worked for one of his predecessors in title, Charles Peek. In addition, after other members of the Peek family had owned the Gilbreaths’ property during the 1960s and 1970s, Raymond’s brother, Jimmy Gilbreath, purchased the property in 1986. Raymond helped Jimmy maintain the property. Jimmy sold the property to Raymond in 1992. Raymond testified that he and Jimmy had built up the driveway with chert from Raymond’s chert pit over the years and that they had both mowed and bush-hogged the strip of land on each side of the drive for many years. According to Raymond, the Harbour fence or the bank along the driveway upon which the Har-bour fence sits had been recognized as the
 
 *477
 
 boundary between the properties for many years by his predecessors in title. Sherry Gilbreath also testified that they owned the land on both sides of the driveway, which, she said, she and Raymond had maintained by mowing it.
 

 Rae Ellen Peek, who had owned the Gilbreaths’ property along with her husband Julian “Jabbo” Peek from 1978 until 1985, testified that Jabbo had maintained the driveway and the ditches on both sides by grading the driveway as needed, cleaning the ditches of debris, and mowing the grass. She said that she and her husband had allowed the daughter and the sister of a neighboring landowner, Gene Upton, to use the driveway when they were either living on some adjoining property or preparing to build on that property.
 

 Jimmy Gilbreath testified that he bought the Gilbreaths’ property from Rae Ellen after Jabbo died. According to Jimmy, he told the Uptons that they could no longer use the driveway. Other than a few people who might have made a wrong turn and family and friends using the driveway to travel to and from the Gil-breaths’ house, no one else used the driveway while he owned the property. Jimmy said that he put a “Private Drive — No Trespassing” sign at the end of the driveway in 1987 or 1988, after his father died, because his mother was at the house alone during the week and he did not want people to drive down the driveway thinking it was a road. Like Raymond, Jimmy testified that his understanding was that the property line between his property and the Harbours’ property was the Harbour fence; he said that he had maintained both sides of the driveway.
 

 Charles Peek, who owned the Gil-breaths’ property in 1967, testified that the Harbour fence was not in existence when he owned the property. However, he said that the Harbours’ predecessor in title farmed the land up to the ditch bank at that time. According to Peek, the driveway and the ditch bank along it was considered the boundary line because he and his family had kept the area clean and mowed.
 

 Richard Harbour testified that he had built the Harbour fence, first in the late 1970s or early 1980s and then again in the early 2000s. Harbour testified that he had taken title to his property from his mother in the late 1970s or early 1980s; he said that he had not had his property surveyed at that time. According to Harbour, he had always understood that the ditch was the property line and that anyone who needed to use the driveway was free to access it. Specifically, Harbour testified that he believed that his property extended from “ditch to ditch,” apparently referencing the ditch bank between the driveway and the Harbour fence and a ditch bordering the western border of his property. He said that he thought the driveway was “a joint thing.”
 

 In fact, Harbour testified that he had sometimes used the driveway, although he had not used it in more recent years other than a few times per month. When asked why he had not placed the Harbour fence on the boundary line, Harbour explained that he had placed the Harbour fence along the earthen berm because, had he placed it in the ditch, the cows could have stepped over it. Harbour said that he had maintained the strip between the driveway and the Harbour fence over the years, noting that the area where he had placed the Harbour fence was “growed completely up” in the later 1970s or early 1980s when he first built the Harbour fence. However, Harbour said that he had not “bothered” with the land between the ditch and the driveway. Harbour also admitted that he had not done any work on the driveway. Charlotte Harbour testified
 
 *478
 
 that, on occasion, she had asked a hired hand, Jack Davis, to clean up the area around the Harbour fence line for them.
 

 Our supreme court has long recognized that a boundary-line dispute between coterminous landowners is subject to “ ‘a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession.’ ”
 
 See McCallister v. Jones,
 
 432 So.2d 489, 491 (Ala.1983) (quoting
 
 Karlin v. Tensaw Land & Timber Co.,
 
 390 So.2d 616, 618 (Ala.1980)).
 

 “ ‘In the past there has been some confusion in this area, but the basic requirements are ascertainable from the applicable case law. In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years.
 
 See Reynolds v. Rutland,
 
 365 So.2d 656 (Ala.1978);
 
 Carpenter v. Huffman,
 
 294 Ala. 189, 314 So.2d 65 (1975);
 
 Smith v. Brown,
 
 282 Ala. 528, 213 So.2d 374 (1968);
 
 Lay v. Phillips,
 
 276 Ala. 273, 161 So.2d 477 (1964);
 
 Duke v. Wimberly,
 
 245 Ala. 639, 18 So.2d 554 (1944);
 
 Smith v. Backus,
 
 201 Ala. 534, 78 So. 888 (1918). But
 
 see, Davis v. Grant,
 
 173 Ala. 4, 55 So. 210 (1911).
 
 See also
 
 Code 1975, § 6-5-200(e). The rules governing this type of dispute are, in actuality, a form of statutory adverse possession.
 
 See
 
 Code 1975, § 6-5-200(c);
 
 Berry v. Guyton,
 
 288 Ala. 475, 262 So.2d 593 (1972).’ ”
 

 McCallister,
 
 432 So.2d at 491 (quoting
 
 Kerlin,
 
 390 So.2d at 618-19).
 
 See also Wadkins v. Melton,
 
 852 So.2d 760, 764 (Ala.Civ.App.2002). In any event, “[t]he burden rests upon the party asserting the adverse claim to prove actual, hostile, open, notorious, exclusive, and continuous possession for the statutory period, ... and such proof must be by clear and convincing evidence.”
 
 Tidwell v. Strickler,
 
 457 So.2d 365, 368 (Ala.1984);
 
 see also Cooper v. Cate,
 
 591 So.2d 68, 70 (Ala.1991).
 

 The trial court determined that the Gil-breaths had not maintained the strip between the driveway and the Harbour fence in a manner sufficient to convey an objective
 
 intent
 
 to claim that area as their own. According to the trial court, the Gilbreaths had not proven, by clear and convincing evidence, that mowing and maintaining the disputed strip had been performed under a claim or right as opposed to being simply, as the trial court described it, “a gesture of neighborly co-existence,” at least before the neighborly relationship deteriorated only a few years before the trial. The trial court further concluded that the Gilbreaths
 
 had
 
 proved an entitlement to an
 
 exclusive
 
 prescriptive easement over the driveway.
 

 On appeal, the Gilbreaths argue that the evidence established adverse possession through their use of the driveway and at least part of the disputed strip for the requisite 10 years (or more, when considering the use of their predecessors in title). First, the Gilbreaths point out that Richard Harbour testified that, although he had cleared the area surrounding the Harbour fence and down to the ditch, he had never “bothered” with the land between the ditch and the driveway. In addition, the Gilbreaths note that Harbour testified that he thought his property extended from “ditch to ditch” and indicated that he did not believe that he owned the driveway. Further, the Gilbreaths argue that the trial court’s conclusion that they had established the elements necessary for a prescriptive easement over the driveway compels the similar conclusion that they proved the necessary elements to establish adverse possession of the driveway as opposed to a mere right to use the driveway.
 

 Although we agree that the evidence does indicate that any maintaining
 
 *479
 
 or mowing of the area between the ditch beside the driveway and the Harbour fence was performed by both the Gil-breaths and the Harbours, Richard Har-bour admitted that he did not maintain the area between the ditch and the driveway and admitted that the driveway was the Gilbreaths’ driveway.
 
 [2]
 
 Thus, we cannot understand how the trial court could have determined that the Gilbreaths had not satisfied their burden of proving “actual, hostile, open, notorious, exclusive, and continuous possession” of the driveway itself and the property between the driveway and the ditch. In fact, regarding the driveway itself, the trial court’s judgment states that “[t]he evidence establishes that the [Gilbreaths] and the [Harbours] and their respective predecessors considered the traveled way to be the [Gilbreaths’] driveway, and that it was located on the [Gilbreaths’] property.”
 

 The trial court’s focus on the Gil-breaths’ intent while they maintained the area between the driveway and the Har-bour fence is relevant; however, the evidence relating to the Gilbreaths’ intent, both subjective and objective, does not support the judgment in this case. “[I]t is the adverse possessor’s
 
 intent
 
 to assert dominion over the property that causes his possession to be deemed ‘hostile.’ ”
 
 Sparks v. Byrd,
 
 562 So.2d 211, 216 (Ala.1990). The trial court noted that the Gilbreaths had, in fact, mowed and maintained the area between “the quarter section line and the [Harbour] fence.” However, the trial court then stated that
 

 “while the [Gilbreaths] may have had a subjective intent to claim the disputed area as their own, there was no objective indication by the [Gilbreaths] that they mowed the area in question with the intent to claim the same by adverse possession. Without the [Gilbreaths’] having manifested such an intent, it was reasonable for the [Harbours] to allow the [Gilbreaths] to mow along the driveway as a gesture of neighborly coexistence.”
 

 The testimony does not support this conclusion. The Gilbreaths’ presented testimony indicating that both they and their predecessors in title had believed either the ditch beside the driveway or the Har-bour fence was the property line; their acts consistent with their belief of ownership over the years are sufficient to establish the intent, or hostility, necessary for adverse possession.
 
 See Smith v. Brown,
 
 282 Ala. 528, 537-38, 213 So.2d 374, 382-83 (1968) (quoting
 
 Sylvest v. Stowers,
 
 276 Ala. 695, 699, 166 So.2d 423, 427 (1964) (indicating that a mistake in locating boundary line and the lack of the intent to claim the land of another does not negate the acquisition of title by adverse possession because “ ‘one does not have to be a willful landgrabber or dishonest in order to acquire title by adverse possession’ ”)). More importantly, however, the Harbours admitted that they recognized the Gil-breaths’ claim to the driveway and the area between the driveway and the ditch.
 
 See Mardis v. Nichols,
 
 393 So.2d 976, 978 (Ala.1981) (quoting
 
 Salter v. Cobb,
 
 264 Ala. 609, 612, 88 So.2d 845, 848-49 (1956) (“
 
 ‘The controlling fact is one of intention
 
 and if there is an inference arising from the evidence that there was an intention on the part of the complainant to hold and enjoy the property up to the line claimed by the complainant as the true dividing line between the property,
 
 with the assent or apparent recognition of it as such on the part of respondent and his predeces
 
 
 *480
 

 sors in title for the stated period,
 
 this is sufficient to discharge the complainant’s burden of proof.’ ”) (second emphasis added)). Richard Harbour testified that his property ran from “ditch to ditch” and that he did not “bother with” or maintain the strip of land between the driveway and the ditch. He also recognized the driveway as the Gilbreaths’ driveway, although he did assert a right to use it. Notably, the trial court’s determination that the Harbours had failed to establish a prescriptive easement over the driveway because their use of the driveway was “intermittent, irregular, and not under any claim of right to do so” further supports a conclusion that the driveway, insofar as it lies outside the Gilbreaths’ deeded property, was recognized by the Harbours as being owned by the Gilbreaths and their predecessors in title either through agreement or by adverse possession. The evidence at trial demonstrates, and the Harbours’ own admissions underscore, the fact that the Gil-breaths openly, notoriously, continuously, and exclusively possessed those portions of the driveway and the area between the driveway and the ditch that lie on the Harbours’ property.
 

 We disagree with the trial court’s conclusion that the Gilbreaths’ failed to communicate an “objective intention” to possess at least part of the disputed area. Because the testimony at trial reveals that the Harbours recognized the Gilbreaths’ claim to the driveway and the property between the driveway and the ditch, the Gilbreaths did prove the requisite elements necessary to establish adverse possession of those portions of the driveway and the area between the driveway and the ditch that are located on the Har-bours’ property. Based on the testimony at trial, the trial court’s judgment denying the Gilbreaths’ adverse-possession claim regarding those portions of the property is plainly and palpably wrong. Therefore, we reverse the judgment of the trial court insofar as it denied the Gilbreaths’ claim of adverse possession of those portions of the driveway and the area between the driveway and the ditch that are located on the Harbours’ property, and we remand this cause for entry of a judgment consistent with this opinion.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Although it used the term "sever” in its judgment, the trial court did not sever the claims against Timothy Harbour into a separate action under Rule 21, Ala. R. Civ. P.
 
 See Gilbreath v. Harbour,
 
 3 So.3d 875, 876 (Ala.Civ.App.2008). Instead, the trial court appears to have chosen to "bifurcate” the trials on the separate claims under Rule 42, Ala. R. Civ. P., thus maintaining the claims in the same action.
 
 See Bryant v. Flagstar Enters., Inc.,
 
 717 So.2d 400, 402 (Ala.Civ.App.1998) (explaining the difference between ordering separate trials and severing claims in an action, including the necessity for a Rule 54(b), Ala. R. Civ. P., certification before an appeal of a judgment disposing of only some of the claims can be taken in those cases in which separate trials are ordered).
 

 [2]
 

 . Although the Harbours did claim a right to use the driveway, they have not challenged the trial court's denial of their claim seeking a prescriptive easement on appeal.