MOORE, Judge.
Walkanita H. Parker, individually and as personal representative of the estate of William L. Parker, deceased, appeals from a judgment of the Coffee Circuit Court (“the trial court”) in favor, of Wesley Glen *644 Rhoades (“Glen”) and Peggy Rhoades. We affirm the trial court’s judgment.
Procedural History
This case involves a boundary-line dispute and was initiated when Walkanita H. Parker and William L. Parker (“Larry”) filed a complaint against the Rhoadeses, who owned property to the south of the Parkers’ property, on November 1, 2011. The Parkers sought, among other things, a judgment establishing the boundary line between the properties owned by the parties. The Parkers asserted, among other things, that a “stob” that had been accepted as the boundary line for over 20 years had been pulled up by Glen and that Glen had then claimed the property that lied north of the stob and south of the Parkers’ property as designated by the Parkers’ deed (“the disputed property”); the Par-kers specifically asserted that they had acquired title to the disputed property by agreement or by adverse possession. The Rhoadeses filed an answer to the complaint on December 2, 2011, and asserted a counterclaim against the Parkers, pursuant to the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq. The Parkers filed a reply to the Rhoadeses’ counterclaim. On May 9, 2012, a suggestion of death was filed, notifying the trial court that Larry had died on March 15, 2012. On September 17, 2012, Walkanita filed a motion seeking to substitute her, as the personal representative of Larry’s estate, as a party for Larry; the trial court granted that motion on September 24, 2012, and Walkanita, in her capacity as personal representative of Larry’s estate, was substituted as a party. (For the remainder of this opinion, any reference to “the Parkers” refers to Walkanita and Larry before Larry’s death. Any reference to “Parker” refers to Walkanita, both individually and as personal representative of Larry’s estate. Finally, any reference to “Walkanita” refers to only Walkanita, without reference to Larry or his estate.)
A bench trial was conducted on October 1, 2014, and, on November 9, 2015, the trial court entered a judgment, which included findings of fact and concluded that the boundary line between the parties’ properties was as established in their respective deeds and that there was no evidence to establish adverse possession of the disputed property by the Parkers. The trial court denied all other requested relief. On December 8, 2015, Parker filed an objection to the trial court’s findings and a motion to alter, amend, or vacate the judgment; that motion was denied by operation of law on March 7, 2016. See Rule 59.1, Ala. R. Civ. P. Parker timely filed a notice of appeal to the Alabama Supreme Court on March 10, 2016; that court transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
Facts
Glen testified that he purchased his property in 1983. He stated that, in 1984 or 1985, he had hired someone to have an old fence removed, which, he said, he had previously recognized as the boundary line between his property and the property owned by “Ms. Cain,” who had owned the Parkers’ property before it was sold to the Parkers in 1994. According to Glen, when he and Cain, who had contributed to the removal of the fence in part, had had the fence removed, they had failed to mark the boundary line between the two properties. Thus, Glen stated, he did not know where the boundary line was because it had not been demarcated, although, he said, he considered it to be within several feet of the property line as stated in the parties’ deeds, in accordance with a survey he later had had performed. Glen testified that there had not been a concrete stob where the old fence had been located, but he testified that there was a “State right-of-way marker,” which was also apparently made of concrete, that had been in the way of the bulldozer as the old fence was being *645 removed, and that he had moved the marker, which had been approximately six or eight feet from the old fence line, to get it out of the way of the bulldozer. According to Glen, after the Parkers purchased the property from Cain in 1994, they had used the disputed property for ingress and egress to their property. Glen stated that he had also used the disputed property to enter his property, that he had never told the Parkers not to use the disputed property or that they were trespassing, and that he did not have a problem with them using the disputed property in such a manner. Although he admitted that he had never given the Parkers permission to use the disputed property, he testified that he had allowed them to use it. He testified that he had kept the disputed property “bush-hogged” or mowed and had kept a drainage ditch along the boundary line “dipped out” as well.
According to Glen, in 2008 or 2009, the stob, or marker, began getting run over by vehicles that used the disputed property and Larry had continued to replace the stob where it had been despite Glen’s having told him that the stob did not have any relevance. Glen testified that he had told Larry that the stob did not indicate the boundary line between the properties but that, after the stob had continued to be displaced by vehicles, Larry had driven an iron rod into the ground where the stob had been, which, Glen said, he had later removed. Glen stated that the confusion regarding the boundary line and the stob’s relation thereto had begun in 2009 or 2010, when Glen had removed the stob from the ground. According to Glen, at that time, Larry had claimed that the stob was the boundary line between the parties’ properties. Glen testified that he and Larry had agreed to have the properties surveyed to determine the boundary line between the properties. He stated that he had had a survey performed in 2009 and that that survey revealed that the disputed property was a part of the Rhoadeses’ property.
Tindell Adams, a professional land surveyor, testified that Glen had retained him to perform a survey regarding the boundary line between the Rhoadeses’ property and the Parkers’ property in July 2009. According to Adams, the boundary line between the two properties was in accordance with the boundary line set out in the Rhoadeses’ deed. He stated that he had not located a concrete marker or evidence indicating that there had been one, although he indicated that a state right-of-way marker would have been placed to indicate the point where a curve of the right-of-way begins or ends and that, in the present case, the curve on the nearby State highway would begin further north or south of the disputed property. Adams also testified that he had lined up his boundary line on the survey with an old fence line and that, if the boundary line had been where the Parkers had indicated the concrete marker had been, the boundary line would have “had a kink to it vee’ing south” and that that would be unusual. He stated that the concrete marker would have disagreed with older evidence indicating the boundary line, which was in the woods and included the old fence line and would not have lined up with the concrete marker.
Larry Parker, Jr., testified that he had helped his father work the farm on the Parkers’ property his entire life and that they had accessed the portion of their field that was next to the Rhoadeses’ property by noting the placement of the concrete stob. Larry Jr. stated that the Parkers had regularly used the disputed property since 1994, that they had never asked permission to use it, and that nobody had ever told them to stop using it. He testified that he had also seen Glen using the disputed property since 1994, parking vehicles, *646 planting, and using it for harvesting as the Parkers had, and, he said, the Parkers had never told Glen not to use the disputed property because they were being neighborly. Larry Jr. testified that the Parkers had considered the stob to be the boundary line between the parties’ properties, that Larry had cautioned the rest of the family not to disturb the stob, and that the stob had vanished in 2011. Jeff Parker, Larry’s brother, also testified that Larry had believed the disputed property was part of his property before he had died. Walkanita testified that Larry had maintained that the stob represented the boundary line between the parties’ properties and that he had told her that he, Glen, and Cain had agreed that the stob represented the boundary line. Larry Jr. testified that the Parkers had had a survey performed and that their survey had included the disputed property in the Rhoadeses’ property.
Jon Robert Chancey, a land surveyor, testified that he had performed a survey for Larry in 2011 and that he had come up with the same boundary line as Adams, in accordance with the deeds to the properties; Chancey testified that he had not seen a concrete marker or post or evidence of the same, and he agreed with Adams that a State right-of-way marker would not exist where the properties adjoined because that point is in the curve rather than the beginning or end of the curve. He testified, however, that, if he had used the boundary asserted by Larry, the point where the properties adjoined would have lined up more with the fence across the highway.
Standard of Review
‘“Where a trial court hears ore tenus testimony [in a boundary-line case], ... its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all.the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found.to be plainly and palpably erroneous.’ Bearden v. Ellison, 560 So.2d 1042, 1043 (Ala. 1990). The presumption of correctness accorded to the trial court’s findings based on evidence presented ore tenus ‘is particularly strong in boundary line disputes and adverse possession cases, and the presumption is further enhanced if the trial court personally views the property, in dispute. Wallace v. Putman, 495 So.2d 1072, 1075 (Ala. 1986).’ Bell v. Jackson, 530 So.2d 42, 44 (Ala. 1988).
“‘The [ore tenus] presumption developed in our law because the trial court has the benefit of seeing and hearing the evidence presented, and, therefore, is a better judge of the credibility of witnesses and the accuracy of certain evidence presented than is an appellate court. The cold record before an appellate court, no matter how meticulous its transcription, is incapable of truly reflecting certain human actions. and reactions that occur during a trial. The special nuances of. the human voice and the infinite number of human facial expressions are incapable of transcription, and, yet, we recognize them as frequently highly indicative of credibility. In addition, in adverse possession cases, the special nature of much of the evidence presented makes clear transcription difficult. Witnesses frequently testify to the existence of “lines, locations, distances, monuments, culverts, fences and the like” by pointing or verbally referring to a diagram. Barnett v. Millis, 286 Ala. 681, 684, 246 So.2d 78, 80 (1971).... An appellate court is without the benefit of the “pointing finger or any information which enables [it] to determine the particular line, location, *647 distance, monument, culvert or fence to which the witness referred.” Id. Accordingly,, the ore tenus presumption of correctness as to the trial court’s findings of fact is “especially strong in adverse possession cases.” Scarbrough [v. Smith, 445 So.2d 553] at 556 [ (Ala. 1984) ].’
“Lilly v. Palmer, 495 So.2d 522, 525-26 (Ala. 1986).”
Shirey v. Pittman, 985 So.2d 484, 486-87 (Ala. Civ. App. 2007).
Analysis
Parker first argues on appeal that the trial court erred in concluding that the Parkers had not acquired title to the disputed property by agreement or by adverse possession.
“Our supreme court has long recognized that a boundary-line dispute between coterminous landowners is subject to ‘ “a unique set of requirements that is a hybrid of the elements of adverse possession by prescription and statutory adverse possession.’” See McCallister v. Jones, 432 So.2d 489, 491 (Ala. 1983) (quoting Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala. 1980)).
“ ‘ “In the past there has been some confusion in this area, but thé basic requirements are ascertainable from the applicable case law. In a boundary dispute, the coterminous landowners may alter the boundary line between their tracts of land by agreement plus possession for ten years, or by adverse possession for ten years. See Reynolds v. Rutland, 365 So.2d 656 (Ala. 1978); Carpenter v. Huffman, 294 Ala. 189, 314 So.2d 65 (1975); Smith v. Brown, 282 Ala. 528, 213 So.2d 374 (1968); Lay v. Phillips, 276 Ala. 273, 161 So.2d 477 (1964); Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554 (1944); Smith v. Bachus, 201 Ala. 534, 78 So. 888 (1918). But see, Davis v. Grant, 173 Ala. 4, 55 So. 210 (1911). See also Code 1975, § 6-5-200(c). The rules governing this type of dispute are, in actuality, a form of statutory adverse possession. See Code 1975, § 6-5-200(c); Berry v. Guyton, 288 Ala. 475, 262 So.2d 593 (1972).” ’
“McCallister, 432 So.2d at 491 (quoting Kerlin, 390 So.2d at 618-19). See also Wadkins v. Melton, 852 So.2d 760, 764 (Ala. Civ. App. 2002). In any event, ‘[t]he burden rests upon the party asserting the adverse claim to prove actual, hostile, open, notorious, exclusive, and continuous possession for the statutory period, ... and such proof must be by clear and convincing evidence.’ Tidwell v. Strickler, 457 So.2d 365, 368 (Ala. 1984); see also Cooper v. Cate, 591 So.2d68, 70 .(Ala. 1991).” ■
Gilbreath v. Harbour, 24 So.3d 473, 478 (Ala. Civ. App. 2009).
Parker first asserts that' the Par-kers had acquired title to the disputed property by agreement plus possession for 10 years. Specifically, she “contends that the parties’ long-standing recognition of the concrete marker as the boundary line was an agreement, that lasted for at least ten (10) years.” The only indication of any agreement between the parties regarding the boundary line was Walkanita’s testimony that Larry had told her that he, Glen, and Cain, the Parkers’ predecessor in title, had agreed that the concrete marker was the boundary line. No evidence of any formal agreement was presented to the trial court, and Glen testified that no such agreement had been reached, noting particularly that, at the time the Parkers purchased their property, Cain suffered from dementia and' no longer lived on the property. We conclude that the trial court’s determination that “the evidence does not establish an agreement between the parties to alter the boundary line” is supported by the ore tenus evi *648 dence presented, and we affirm the trial court’s judgment as to that issue.
Parker also argues on appeal that the trial court erred in declining to conclude that the Parkers had acquired title to the disputed property by adverse possession. As stated above, in order to prove that the boundary line between the parties’ properties had been altered by adverse possession, clear and convincing evidence of actual, hostile, open, notorious, exclusive, and continuous possession for 10 years was required. See Gilbreath, supra.
“To fulfill the requirement of ‘exclusivity of possession,’ a party must assert possessory rights distinct from those of others. The rule is generally stated that ‘“[t]wo persons cannot hold the same property adversely to each other at the same time.”’ Beason v. Bowlin, 274 Ala. 450, 454, 149 So.2d 283, 286 (1962), quoting Stiff v. Cobb, 126 Ala. 381, 386, 28 So. 402, 404 (1899). Exclusivity of possession ‘is generally demonstrated by acts that comport with ownership.’ Brown v. Alabama Great Southern R. [Co.], 544 So.2d 926, 931 (Ala. 1989). These are ‘acts as would ordinarily be performed by the true owner in appropriating the land or its avails to his own use, and in preventing others from the use of it as far as reasonably practicable.’ Goodson v. Brothers, 111 Ala. 589, 596, 20 So. 443, 445 (1896).”
Sparks v. Byrd, 562 So.2d 211, 215 (Ala. 1990). Parker cites Strickland v. Markos, 566 So.2d 229 (Ala. 1990), for the proposition that “ ‘[ejxclusiveness of possession is often evidenced by the erection of physical improvements on the property, such as fences, houses or other structures, and, in their absence, substantial activity on the land is required.’” Id. at 235 (quoting 2 C.J.S. Adverse Possession § 54 at 726-27). With regard to exclusivity, this court observed in Wadsworth v. Thompson, 912 So.2d 529, 533 (Ala. Civ. App. 2005), that, “[i]n Dees v. Pennington, 561 So.2d 1065, 1068 (Ala. 1990), our Supreme Court reversed a judgment in favor of the party alleging adverse possession of land because both parties had repeatedly cut timber on the disputed property, thus preventing the party asserting ownership by adverse possession from proving exclusive possession for the requisite period.”
In the present case, both Glen and Larry Jr. testified that they had seen the other using the disputed property in the same manner as it had been used by the other, beginning in 1994. Both also indicated that they had allowed the other party to use the disputed property and had never told the other party not to use it because, both said, they had been being neighborly. To the extent the Parkers’ activity on the land was sufficiently substantial such that it could support a claim of exclusive possession, we note that the undisputed evidence also indicated that the Rhoadeses had used the disputed property in the same manner as the Parkers, and Glen testified that, in addition to using the disputed property for ingress and egress, he had “bush-hogged” or mowed the disputed property and, following his obtaining a survey of the disputed property, had begun planting on the disputed property. Accordingly, the Parkers did not prevent others from the use of the disputed property such that they had appropriated the land for their own use. Because the Par-kers’ use of the disputed property was not exclusive as to the Rhoadeses, in particular, we conclude that the Parkers failed to meet their burden of proving that element of adverse possession. Accordingly, the trial court’s conclusion that the Parkers had not proved their claim of adverse possession of the disputed property was not plainly and palpably wrong, and we affirm the trial court’s judgment in favor of the Rhoadeses.
*649 Parker also argues on appeal that the trial court erred in declining to find that she had a perpetual easement over the disputed property for ingress and egress for vehicular and pedestrian traffic. Although Parker recognizes that the complaint did not include a request for a perpetual easement, she refers in her appellate brief to testimony by Glen that he had no objection to Parker’s having an easement over the disputed property for those uses. Citing Rule 15(b), Ala. R. Civ. P., which allows for issues not raised by the pleadings to be tried by the express or implied consent of the parties, Parker argues on appeal that Glen’s statements before the trial court, without objection, resulted in the issue regarding her request for a perpetual easement having been raised. Glen testified in response to questioning by the Parkers’ attorney as follows:
“Q. So the last line of questions—few questions I want to ask you is this: You said several times ... that you really didn’t have a problem with the Parkers using [the disputed property]?
“A. No. We could share it for a driveway.
“Q. Okay. So let’s just say for the sake of argument that I said, Mr. Rhoades, that’s your property. In exchange, give us a permanent easement over that driveway. Would you object to that?
“A. I would probably let them use it, you know.
“Q. You’d agree to that?
“A. Well, could I just think on it?
“Q. Yes, sir.
“A. I mean, you know. I mean, I can’t spit you out one like that, but—but why would you want that?
“Q. Well, I’m just asking if that were the case—if I said, Mr. Rhoades, that’s your property—
“A. Sure. I’ll be a neighbor to them.
“Q. And—and would you give them a permanent easement for that strip?
“A. Yes. I’ll be a neighbor to them, but they’ve got a half a mile access all the way around the place. Why would they want that?
“Q. I understand what you’re—I understand what you’re saying, but under my hypothetical, you wouldn’t object to that?
“A. No. I’d—I’d—I’d try to live and let live.”
Assuming, without deciding, that Glen’s testimony amounted to the issue of an easement being tried by the consent of the parties, we decline to reverse the trial court’s judgment on this basis.
“‘Rule 28(a)(10), Ala. R. App. P., requires that arguments in an appellant’s brief contain “citations to the cases, statutes, other authorities, and parts of the record relied on.”’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala. 2007). ‘When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court’s duty nor its function to perform an appellant’s legal research.’ City of Birmingham v. Business Realty Inv. Co., 722 So.2d 747, 752 (Ala. 1998).”
Salter v. Moseley, 101 So.3d 242, 247 (Ala. Civ. App. 2012). On appeal, the only citation to authority in support of Parker’s argument that the trial court erred in failing to award her an easement over the disputed property is her citation to Rule 15, Ala. R. Civ. P. Parker has failed to cite any authority whatsoever regarding the granting of an easement or any elements that must be met for such an award. Even assuming that Glen’s testimony that he would not object to Parker’s attorney’s “hypothetical” request for an easement amounted to his consent to the same, we cannot agree that Glen’s statements necessarily require the trial court to have granted an easement in Parker’s favor over the *650 disputed property. Because Parker has failed to cite to any authority in support of that proposition, we are precluded from considering the issue further. McGriff v. Eastern Shore Travel, Inc., 592 So.2d 1065, 1066 (Ala. Civ. App. 1992).
Because Parker has failed to present an argument on appeal that merits reversal, we affirm the trial court’s judgment.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.