PITTMAN, Judge.
Bobby Connell and three of his siblings, as well as one child of a deceased sibling and two children of another deceased sibling (“the Connells”), appeal from a judgment in favor of Joseph Moody and Laura Moody in a boundary-line dispute among coterminous landowners. We affirm.
The Connells own rural property fronting on Old Oakman-Parrish Road in Walker County. The property is identified as “parcel 20” on the Walker County Revenue Commissioner’s map. The parents of the Connell siblings, P.F. Connell and Bula Mae Connell, moved onto the property in 1961, as tenants of the adjoining landowner, Ada Kirkpatrick, a widow. P.F. and Bula Mae rented the property for 10 years and then purchased the property from Kirkpatrick in 1971. P.F. died in 1995, and Bula Mae died in 2006. The Connells acquired their interests in parcel 20 under the terms of Bula Mae’s will.
According to Carlos Connell and Bobby Connell (the two elder Connell sons), two weeks after their parents had purchased the property from Kirkpatrick, they had assisted their father, P.F. Connell, and Jack Kirkpatrick, the son of Ada Kirkpatrick, in erecting a barbed-wire fence along a tree line, thus separating, they said, the Connell property (parcel 20) from the Kirkpatrick property (parcel 21.001, the adjoining property to the west). Carlos and Bobby and their brother, W.A. Con-nell, testified that, after the fence was erected in 1971, Ada Kirkpatrick had recognized it as the boundary line between her property and the Connells’ property, notwithstanding the fact that the fence did not correspond to the boundary line designated in the Kirkpatrick deed. The Con-nell sons testified that their father had planted a vegetable garden on the Connell side of the fence every year until 1994 and had kept mules and horses in that area during the offseason.
Ada Kirkpatrick died in 1997, and the ownership of parcel 21.001 changed hands several times before 2006, when the Mood-ys purchased parcel 21.001 from the Federal National Mortgage Association (“Fannie Mae”) following a foreclosure sale. The Moodys testified that when they purchased parcel 21.001, there was no barbed-wire fence separating it from parcel 20 to the east and that they did not commission a survey of the property. Instead, they testified, a realtor had presented them with a parcel map from the Walker County Revenue Commissioner.
After the former occupant’s statutory right of redemption had expired, the *551 Moodys began making improvements to the property. First, they made repairs to the residence located on the property. Next, they began cleaning up the land and cutting back the overgrowth. Laura Moody testified that, during the cleanup, she had found several rusty and broken pieces of barbed wire, but, she said, she had seen no fence line. In February 2008, the Moodys had a survey performed because they wanted to build a barn on the eastern side of their property. The surveyor placed stakes along the eastern property fine as set out in the Moodys’ deed. The Moodys noticed that the surveyor’s line ran through a dilapidated old shed, indicating that two-thirds of the shed was on their property and one-third of the shed was on the Connells’ property. The Moodys asked the Connells about the shed, and Carlos Connell informed them that the line as surveyed was not the correct property line. Carlos explained to the Moodys that his father and Ada Kirkpatrick had mutually established the boundary line when they had erected the barbed-wire fence in 1971, after which, Carlos said, the Connells had planted crops and pastured animals on their side of the fence for more than 20 years. The Moodys later discovered that the survey- or’s marking stakes had been pulled up and that W.A. Connell had strung a barbed-wire fence along a tree line to the west of the surveyor’s staked line.
In August 2008, the Moodys sued the Connells, alleging a claim of trespass and seeking a judicial determination of the boundary line between the properties. Following an ore tenus proceeding, the trial court entered a judgment in favor of the Moodys in which it determined that
“[t]he boundary line between the parties’ property as described on the [Moodys’] deed is the true and accurate boundary line[,]
“[t]he [Connells] without permission from the [Moodys] removed the survey markers placed on the boundary line by the [Moodys’] surveyor^ and]
“[t]he [Connells] trespassed on the [Moodys’] property by placing a barb wire fence on the property.”
From that judgment, the Connells timely appealed to the Supreme Court of Alabama. The appeal was transferred to this court pursuant to § 12-2-7(6), Ala.Code 1975.

Standard of Review

“Where a trial court hears ore tenus testimony, as in this case, its findings based upon that testimony are presumed correct, and its judgment based on those findings will be reversed only if, after a consideration of all the evidence and after making all inferences that can logically be drawn from the evidence, the judgment is found to be plainly and palpably erroneous. The trial court’s judgment will be affirmed if there is credible evidence to support the judgment. Furthermore, where the trial court does not make specific findings of fact concerning an issue, this Court will assume that the trial court made those findings necessary to support its judgment unless such findings would be clearly erroneous. The presumption of correctness is particularly strong in boundary line disputes and adverse possession cases, because the evidence in such cases is difficult for an appellate court to review.”
Bearden v. Ellison, 560 So.2d 1042, 1043-44 (Ala.1990) (citations omitted).

Discussion

Citing Kerlin v. Tensaw Land & Timber Co., 390 So.2d 616, 618 (Ala.1980), the Connells argue that thteir parents acquired title to the disputed property by *552 virtue of a 1971 agreement between the parties’ predecessors in title to alter the location of the boundary line and that, following that agreement, they and their parents had been in the exclusive possession of the disputed property for more than 10 years. In the alternative, they argue that, even if the 1971 agreement is deemed to be invalid, they have acquired title to the disputed property by adverse possession. The trial court made no specific findings of fact regarding either the alleged 1971 agreement to alter the boundary line or the Connells’ adverse-possession claim. The trial court’s determination, however, that the true boundary line was the one described in the Moodys’ deed constituted an implicit rejection of both arguments by the Connells. The trial court’s implicit findings — that the parties’ predecessors in title had not agreed to alter the existing boundary line between their parcels in 1971 and that the Connells and their parents had' not adversely possessed the disputed property thereafter— are due to be affirmed because they are not plainly erroneous.

Alteration of the Boundary Line by Agreement

“Coterminous landowners may locate a boundary by agreement, provided one of them holds to the boundary so agreed upon for a period of 10 years after the agreement is reached. Similarly, one coterminous owner may engage in conduct which may form the basis of an estoppel against him or her and has the same practical effect as an agreement. For example, if a party represents the location of a boundary to his neighbor who, in reliance on the representation, makes valuable improvements on the property, or acts detrimentally, the owner making the representation will not be heard later to claim that his statements concerning the boundary were untrue. In essence, the representation and reliance upon it forms an estoppel which operates to fix the boundary.”
1 Jesse P. Evans III, Alabama Property Rights and Remedies § 12.4[a] (3d ed.2004) (footnotes omitted). See also Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d 1029, 1031 (Ala.1992); Wallace v. Putman, 495 So.2d 1072, 1076 (Ala. 1986); Kerlin v. Tensaw Land & Timber Co., 390 So.2d at 618; Smith v. Cook, 220 Ala. 338, 341, 124 So. 898, 900 (1929); Jacks v. Taylor, 27 So.3d 504, 508-09 (Ala. Civ.App.2008). Although Alabama cases have not always emphasized it, there is a requirement that the boundary line be uncertain or in dispute before the parties may reach an agreement to alter it. See generally Alan Stephens, Annot., Sufficiency of Showing, in Establishing Boundary by Parol Agreement, that Boundary was Uncertain or in Dispute Before Agreement, 72 A.L.R.4th 132 (1989). The Connells presented no evidence indicating that before their predecessors in title allegedly agreed with the Moodys’ predecessors in title to alter the boundary line between their respective properties, the boundary was uncertain or in dispute.
■With respect to the alleged 1971 agreement, the trial court evidently concluded either that the parties’ predecessors in title had not erected a barbed-wire fence to the west of the deeded boundary line or, if they had erected such a fence, that the fence represented merely a recognition of the fact that Kirkpatrick had permitted the Connells’ parents to use a portion of her property, but not that Kirkpatrick had agreed to alter the boundary line described in her deed. See Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d at 1031 (stating that, “[although a fence is normally an ‘outstanding symbol of possession,’ ... the record in this case indicates that [the defendant] occupied the *553 land and constructed a fence on the disputed 20 acres with the express permission of [the plaintiff]” (quoting Cockrell v. Kelley, 428 So.2d 622, 624 (Ala.1988))).
The Moodys called as a witness Connie Gamer, who refused to testify on the ground that the anti-depressant medication and “nerve pills” he was taking made him doubt his competence as a witness. Following a bench conference, the parties made the following joint offer of proof regarding Garner’s proposed testimony: that Garner “had no knowledge of the fence line as it was established and put up by the Connells’ father and Jack Kirkpatrick back when the Connells’ parents acquired the property” but that, at some point before the Moodys purchased parcel 21.001, Garner had offered to purchase parcel 20 from the Connells and that W.A. Connell had informed Garner that the property line between the two parcels “goes through the [Connells’] shed.” W.A. Connell denied both that Garner had offered to purchase the land and that he had informed Garner that the Connells’ shed was encroaching on parcel 21.001. If the trial court had accepted the joint offer of proof (which offer was akin to a joint stipulation of fact), as it was permitted to do, see Ezell v. Childs, 497 So.2d 496, 498 (Ala.Civ.App.1985) (stating that oral agreements in open court are binding upon the parties), it could have found that, even if Jack Kirkpatrick and the Connells’ parents had erected a fence in 1971, that fence did not represent the true boundary line between the parties’ properties because, as the joint offer of proof indicated, W.A. Connell understood and acknowledged that the fence (and the shed, a structure on the Connells’ side of the fence) encroached upon parcel 21.001.

Alteration of the Boundary Line by Adverse Possession

The trial court was authorized to reject the Connells’ alternative argument regarding adverse possession because the evidence presented by the Connells indicates that their parents constructed the fence with the permission of Ada Kirkpatrick, the Moodys’ predecessor in title, and therefore that their possession was not hostile.
“Generally, possession of land entered into with permission of the owner will not ripen into title.... In order to change possession from permissive to adverse, the possessor must make a clear and positive disclaimer or repudiation of the true owner’s title. The possessor must give the true owner actual notice of such disavowal, or he must manifest acts or make a declaration of adverseness so notorious that actual notice will be presumed....
[[Image here]]
“The trial court found that [the defendant’s] possession had not been hostile but had been with the permission of the landowner. There was evidence to support that finding. Therefore, [the defendant] failed to establish the elements necessary to prove that his possession of the disputed property was adverse.”
Moss v. Woodrow Reynolds & Son Timber Co., 592 So.2d at 1031.
The trial court’s judgment was supported by the evidence and is due to be upheld. “[W]hen a trial court, after ore tenus proceedings, enters a judgment setting a boundary line between coterminous landowners, that judgment is presumed correct if it is supported by credible evidence.” Henderson v. Dunn, 871 So.2d 807, 810 (Ala.Civ.App.2001) (citing Valentine v. Ireland, 580 So.2d 581 (Ala.1991)).
The judgment of the Walker Circuit Court is affirmed.
AFFIRMED.
*554 THOMPSON, P.J., and BRYAN and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.